[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO OPEN DEFAULT NO. 109 AND MOTION TOSTRIKE NO. 105
On April 17, 1995, the plaintiffs, Richard Capozzi and Deborah S. Hindin, filed a complaint against the defendants, Richard P. Masselli, Madison Rutherford and Rhynie Jefferson, for damages stemming from the sale of Masselli's home to Rutherford and Brigitta Beck, who is not a party to this action.
In their complaint, the plaintiffs allege that they are licensed real estate brokers and that they entered into an exclusive listing agreement with Masselli to procure a seller for his home. The agreement was in effect for the period from April 1, 1994, to October 1, 1994.
The plaintiffs allege that they showed the home to Jefferson in June, 1994, after which Jefferson allegedly told Hindin that she was not interested in the property. Jefferson and Rutherford then allegedly entered into direct negotiations with Masselli for the purchase of the home in violation of the exclusive listing agreement. In July, 1994, a co-brokerage agreement was executed by Capozzi and Greenwood Associates, pursuant to which the plaintiffs would receive a percentage of any commission earned by Greenwood as a result of a sale of the premises. The co-brokerage agreement was in effect from July 5, 1994 to September 1, 1994. Rutherford and Brigitta Beck purchased the home on October 7, 1994, after the expiration of both listing agreements. The plaintiffs did not receive a commission from the sale of Masselli's home.
In the first count of their complaint, directed toward CT Page 14248 Masselli only, the plaintiffs seek damages for breach of contract in that they never received a commission from the sale. The second count of the complaint is directed toward defendants, Jefferson and Rutherford, and seeks damages for tortious interference with the contractual relationship between the plaintiffs and Masselli. The third count of the complaint is likewise directed toward Jefferson and Rutherford, and seeks damages for fraudulent misrepresentation in that Jefferson allegedly indicated to the plaintiffs that she was not interested in Masselli's property. Finally, in count four of the complaint, the plaintiffs seek damages from all three defendants for allegedly conspiring to fraudulently deprive plaintiffs of their commission due under the listing agreement.
On June 12, 1995, the plaintiffs moved for default based on the defendants' failure to plead, and the motion was granted by the court on July 17, 1995. On July 24, 1995, defendants, Jefferson and Rutherford, moved to strike counts two and three of the complaint in their entirety, and count four as it pertained to them on the ground that they were not parties to the listing agreement between Masselli and the plaintiffs, which, according to Jefferson and Rutherford, is a prerequisite to filing suit for a commission pursuant to General Statutes § 20-325a.
In their memorandum in support of the motion to strike, Jefferson and Rutherford argue that the plaintiffs, by bringing this action, are actually trying to recover their commission under the listing agreement even though the complaint is framed differently. They argue that this attempt by the plaintiffs to recover their commission from a nonparty to the listing agreement is in derogation of the requirements of General Statutes §20-325a(b), and that, therefore, the complaint is legally insufficient. Jefferson and Rutherford rely on the Connecticut Supreme Court's decision in McCutcheon Burr, Inc. v. Berman,218 Conn. 512, 590 A.2d 438 (1991), for the principle that the only way a broker may recover his commission is by pursuing a breach of contract action on the listing agreement. In addition, they rely on Farley Company v. Alex, 9 Conn. L. Rptr. 480, 482 (August 30, 1993, Higgins, J.), in which the court granted the defendant's motion to strike the plaintiff's fraudulent misrepresentation claim, calling the claim "an attempt to effect an end run around the requirements of § 20-325a(b)."
Jefferson and Rutherford argue that since they were not parties to either the original listing agreement between Masselli CT Page 14249 and the plaintiffs, nor the agreement between Masselli and Greenwood, the plaintiffs have no legal basis to recover a commission from them. Additionally, Jefferson and Rutherford argue that in view of the fact that a new listing agreement was in effect between Masselli and Greenwood from July, 1994, to September, 1994, there was no listing agreement in effect between Masselli and the plaintiffs when they purchased the property, and thus, no contractual relations with which they could interfere.
On July 28, 1995, the plaintiffs filed an objection to the motion to strike on the ground that it was an improperly filed pleading, since the defendants had been defaulted by the court for their failure to plead on July 17, 1995. The plaintiffs argue that the only proper pleading following a default is an answer, and thus, the motion to strike is not properly before the court. On August 8, 1995, Jefferson and Rutherford moved to open the default judgment entered against them, and the motion is currently before this court for determination.
On August 24, 1995, the plaintiffs filed an additional objection to the motion to strike on the ground that their cause of action for tortious interference with contractual relations, by its definition, does not require the existence of a contract between the plaintiff and defendants. In their memorandum in opposition to the motion to strike, the plaintiffs do not dispute the defendants' contention that pursuant to § 20-325a, for a broker to recover a commission, he must sue on a properly executed listing agreement. However, they argue that they are not seeking to recover a commission; rather, they assert that they are seeking damages for tortious interference with their contractual relations with Masselli. Thus, the plaintiffs argue that their complaint states a legally sufficient claim for tortious interference with contractual relations.
A. The Default judgment
At the outset, it must be noted since a default judgment has been entered against the defendants, and the case has been set down on the hearing in damages list, the default may only be set aside by the court. Practice Book § 363A. Thus, the plaintiffs are correct in their contention that the defendants' motion to strike is not properly before the court, since a default judgment must be opened before the defendant may file a motion to strike. McGhie v. Reliable Taxi Co., 8 CSCR 904, 905
(August 4, 1993, Leheny, J.). CT Page 14250
As noted above, the defendants' motion to open the default for failure to plead is currently before this court. "A motion to open default where judgment has not yet been rendered is made pursuant to Practice Book Section 376. . . . To open the default, the . . . [defaulted party] must demonstrate to . . . [the] court that it was prevented from . . . [pleading] in a timely manner because of mistake, accident, or other reasonable cause prior to the date default was entered." Northwest Bank for Savings v.Hinman, 7 CSCR 331, 331 (January 27, 1992, Pickett, J.).
The defendants have alleged that their delay in pleading was caused by the "considerable time which was required to research and write the Motion to Strike, and by the erroneous belief that the Motion for Default would appear on the Short Calendar." This is a sufficient basis for setting aside the default judgment and the default is in fact set aside.
B. The Motion to Strike
The function of a motion to strike is "to test the legal sufficiency of a pleading." RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 15 (1994). "The motion to strike . . . admits all facts well pleaded." Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989). Further, on a motion to strike "[t]he court must construe the facts in the . . . [pleading] most favorably to the . . . [pleader]." Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988). In ruling on this motion to strike, each challenged count of the complaint must be examined to determine its legal sufficiency.
1. Count Two
Count two of the complaint seeks damages for Jefferson and Rutherford's alleged tortious interference with the plaintiffs' contractual relationship with Masselli. The elements of a claim of tortious interference are: (1) the existence of a contractual relationship; (2) knowledge by the defendant of that relationship; (3) an intention on the part of the defendant to interfere with the relationship; and (4) actual loss suffered by the plaintiff as a result of the interference. Solomon v.Aberman, 196 Conn. 359, 364, 493 A.2d 193 (1985).
The plaintiffs have insufficiently alleged a cause of action CT Page 14251 for tortious interference with contractual relations in that they have not alleged any element of intent on the part of Jefferson and Rutherford to interfere with plaintiffs' right to recover a commission under the listing agreement. The plaintiffs allege that Jefferson and Rutherford knew of the listing agreement between Masselli and the plaintiffs and that "in spite of this knowledge, . . . [they] continued to deal directly with . . . Masselli . . . ." However, there is no allegation of an intention on the part of Jefferson and Rutherford to interfere with the plaintiffs' rights under the listing agreement. Thus, the motion to strike count two of the complaint is granted as it is legally insufficient.
It should be noted, however, that if the plaintiffs had sufficiently alleged all the elements of the tort of interference with contractual relations, the fact that General Statutes §20-325a provides the exclusive remedy for obtaining commissions for land sales would not render count two legally insufficient. While § 20-325a may provide the sole basis for recovering a commission, it does not limit the right of a real estate broker to recover damages in tort for interference with contractual rights. See Charter House Realty v. Liu, Superior Court, Judicial District of Stamford-Norwalk at Stamford, Docket No. 088429 (December 6, 1990, Lewis, J.) (recognizing that where there is a valid listing agreement, a broker may maintain a claim against a purchaser for tortious interference with the listing agreement). Jefferson and Rutherford's reliance on the Farley decision is misplaced. In that case, the plaintiff broker was seeking damages for misrepresentation from the defendant-owner, in addition to damages for breach of the listing agreement. Farley Company v.Alex, supra, 9 Conn. L. Rptr. 481. The court there found that the cause of action for misrepresentation was merely "an attempt to effect an end run around the requirements of § 20-325a(b)" as in the McCutcheon case. Id., 482 Thus, the court there granted the defendant's motion to strike the misrepresentation claim. Id.
The instant case, however, is factually inapposite to Farley,
since here the misrepresentation claim is asserted against the ultimate purchaser of the property who was not a party to the contract. Thus, Farley is distinguishable from this case.
2. Count Three
In count three, the plaintiffs seek damages from Jefferson and Rutherford for Jefferson's alleged fraudulent CT Page 14252 misrepresentation that she was not interested in the property. "`The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.'" Mitchell v. Mitchell,31 Conn. App. 331, 336, 625 A.2d 828 (1993).
The plaintiffs allege that they showed the property to Jefferson in June, 1994, and that Jefferson thereafter falsely represented to Hindin "on several occasions that . . . [she was] no longer interested in the . . . real estate market . . . ."[1] The plaintiffs also allege that they relied on these statements to their detriment. However, there is no allegation in the complaint that Jefferson made the alleged misrepresentations with the requisite intent to induce reliance by the plaintiffs, which is the third element of a fraud claim. Thus, the court grants the motion to strike count three on that basis.
3. Count Four
Count four of the complaint seeks damages against all three defendants for their alleged conspiracy to fraudulently deprive the plaintiffs of their right to a commission. Jefferson and Rutherford move to strike count three as it pertains to them on the ground that they were not parties to either listing agreement and thus owe no duty to the plaintiffs. However, the defendants' position in this regard does not adequately address the legal sufficiency of this portion of the complaint.
It appears that a cause of action for conspiracy to commit a tort exist in Connecticut. See Talit v. Peterson,15 Conn. L. Rptr. 166 (September 27, 1995, Blue, J.) (discussing the viability of a cause of action for civil conspiracy). The elements of that tort are: "(1) a combination between two or more persons, (2) to do a criminal or unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damages to the plaintiff."Williams v. Maislen, 116 Conn. 433, 437, 165 A. 455 (1933).
In support of their motion to strike count four, Jefferson and Rutherford argue that since they were not parties to either listing agreement, the plaintiffs cannot maintain a cause of CT Page 14253 action against them for conspiracy to fraudulently deprive the plaintiffs of their commission. However, their argument does not address the legal sufficiency of the fourth cause of action since the tort of conspiracy to commit fraud is distinct from an action to recover a commission pursuant to a contract. While it is true that a broker's right to recover a commission depends on his compliance with General Statutes § 20-325a, the plaintiffs here are not seeking to recover their commission from Jefferson and Rutherford. Rather, they are seeking damages for conspiracy to commit fraud.
The plaintiffs have sufficiently alleged the elements of the tort of conspiracy to commit fraud. They have alleged that all three defendants conspired to deprive the plaintiffs of their right to a commission and that there was an act committed in furtherance of the conspiracy, namely, Jefferson's representation that she was not interested in the property. Finally, the plaintiffs have alleged that they suffered damages as a result of the defendants' actions. Therefore, the plaintiffs have alleged facts sufficient to withstand a motion to strike this count of the complaint. Whether the plaintiffs will be able to prove such allegations at trial is not suitable for determination on a motion to strike. Levine v. Bess Paul Sigel Hebrew Academy ofGreater Hartford, Inc., 39 Conn. Sup. 129, 132, 471 A.2d 679
(Super.Ct. 1983) ("[i]n judging a motion to strike . . . `it is of no moment that the plaintiff may not be able to prove . . . [its] allegations at trial'").
Accordingly, Jefferson and Rutherford's motion to open the default judgment against them is granted; their motion to strike counts two and three of the complaint as legally insufficient is likewise granted; and the motion to strike count four as it relates to defendants, Jefferson and Rutherford, is denied.
Stodolink, J.