WILLIAM D. MEYERS ET AL. *v.* CORNWELL QUALITY TOOLS, INC., ET AL.
(13783)
(14089)

Foti, Lavery and Schaller, Js.

Argued November 29, 1995—officially released April 9, 1996

*Chester J. Bukowski, Jr.,* with whom, was *Christopher L. Slack,* for the appellants-appellees (defendants).

*Kathleen Eldergill,* for the appellees-appellants (plaintiffs).

SCHALLER, J. The defendants and the plaintiffs filed separate appeals[1] in a fraud and Connecticut Unfair Trade Practices Act (CUTPA)[2] action. The defendants[3] appeal from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiffs on both counts.[4] The defendants claim that the trial court improperly (1) submitted the CUTPA claim to the jury, (2) denied their motion to set aside the verdict on the fraud count, which they based on the plaintiffs' claimed failure to make out a prima facie case and on the claim that the evidence was contrary to the verdict, (3) admitted evidence of dealer terminations and collateral misconduct, (4) instructed the jury on the burden of proof regarding the fraud claim, (5) instructed the jury on the CUTPA claim, (6) failed to set aside the jury's verdict on the CUTPA claim as contrary to the evidence, and (7) denied the defendants' motion for a mistrial based on jury misconduct. The plaintiffs appeal from the trial court's denial of their motion to open the judgment and for reconsideration, claiming that even if they did not have a right to a jury trial on the CUTPA claim, the trial court improperly refused to consider the evidence and to make its own factual determination as to the CUTPA claim. We affirm the judgment of the trial court.

---

[1] We sua sponte ordered the two appeals consolidated.

[2] See General Statutes §§ 42-110a through 42-110q.

[3] The defendants are Cornwell Quality Tools, Inc., and Raymond Phelan.

[4] The jury also found for the plaintiffs on the defendants' counterclaim alleging breach of contract, and the trial court rendered judgment accordingly. The counterclaim is not at issue in this appeal.

The jury reasonably could have found the following facts. Cornwell Quality Tools, Inc. (Cornwell), manufactures tools and recruits dealers to buy its tools. Cornwell assigns the dealers particular territories where the dealers sell the tools they have purchased from Cornwell. In the spring of 1989, Raymond Phelan was a district manager for Cornwell and had met with the plaintiffs about William D. Meyers' (Meyers)[5] becoming a Cornwell dealer.[6]

Phelan initially told the plaintiffs that an investment of $40,000 was required to become a dealer, and Phelan showed the plaintiffs the Cornwell recruiting manual, which suggested a $50,000 investment. Phelan stated that Cornwell would provide Meyers with training and support. Phelan also told the plaintiffs that Cornwell would buy back any tools, minus a 10 percent restocking fee, if Meyers left the business.

Phelan presented the plaintiffs with Cornwell's projected income statement of dealers who had completed a two year initial period. The statement, which was included in Cornwell's recruiting manual, projected the income of Cornwell tool dealers as $65,279 per year. The statement, to which added his own representations, also indicated that a dealer's net annual sales would be $200,000 with a gross profit of 42.5 percent. The actual average annual sales of Cornwell dealers who had completed the initial two year period was about $90,000 rather than the $200,000 indicated in Cornwell's projected income statement. In addition, a more accurate figure for a dealer's estimated gross profit was 30 to 35 percent.[7]

---

[5] The plaintiffs are William D. Meyers and Dianna Meyers and will be referred to collectively as the plaintiffs. We refer herein to William D. Meyers as Meyers.

[6] The plaintiffs alleged, and the defendants admitted, that at all relevant times Phelan was acting as Cornwell's agent.

[7] Pat Newman, a former Cornwell dealer and field manager, testified to the actual figures.

The plaintiffs obtained a second mortgage on their home to finance their investment in the dealership, providing Meyers with $22,000 of investment capital. On the basis of his experience with many recruits, Phelan told the plaintiffs that $22,000 would be a sufficient investment because Meyers was buying a used truck and was going into a developed territory. Meyers started in June, 1989, and Phelan traveled with him for the first two weeks, introducing him to customers and showing him how to take and record orders.

Within a short time, Meyers began to have difficulty with the business, including problems with restocking inventory, operating computer software that Phelan had recommended, and acquiring a customer base. Phelan maintained contact with Meyers by means of weekly or biweekly telephone calls or visits. After Phelan emphasized that dealer inventory must be kept at $25,000, Meyers requested, in order to keep his business operating, that Cornwell exchange some of the tools in the initial inventory for tools that were selling better. Phelan advised Meyers not to do this because Meyers would have to pay the 10 percent restocking fee.

By August, 1989, Meyers became unable to keep current his bill payments to Cornwell. In October, 1989, bill collectors hired by Cornwell contacted the plaintiffs. Phelan accused Meyers of not working hard enough and not keeping up his inventory. After Meyers explained that he was trying to allocate his finances in the best possible way, Phelan suggested that the plaintiffs try to borrow more money. Meyers made numerous attempts to obtain additional small business loans, but was unable to do so.

In November, 1989, Cornwell placed a hold on Meyers' credit, instructing him that he could not buy any more tools until he paid his bill. A few months later, by letter dated February 23, 1990, Cornwell terminated

Meyers' dealership. Meyers then contacted Phelan who told him to contact Cornwell. When Meyers contacted Cornwell, he was told that the termination had been made at the urging of Phelan. When he called Phelan to inquire why he was being terminated, a heated discussion ensued, and Phelan hung up on him. Meyers then shipped his remaining inventory to Cornwell. Cornwell refused to accept a portion of the tools, worth $3200, and returned those tools at Meyers' expense. Cornwell credited Meyers' account for the tools that it did accept. Additional facts will be set out in the opinion where necessary.

## I

The defendants first claim that the trial court improperly submitted the CUTPA claim to the jury. They rely on *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 161–62, 645 A.2d 505 (1994), for the proposition that a plaintiff has no right to a jury trial of a CUTPA claim. The defendants argue, therefore, that we should order a new trial in which the court would make the necessary factual findings on the CUTPA claim. We disagree.

The following procedural history is relevant to our resolution of this issue. On November 26, 1990, the plaintiffs filed a complaint against the defendants. On February 11, 1991, the defendants filed an answer, a counterclaim and a general claim for a jury trial. The plaintiffs responded on February 20, 1991, with their answer and special defenses to the counterclaim, as well as their own general claim for a jury trial. On November 10, 1993, the plaintiffs began presenting evidence to the jury.

The defendants first objected to the submission of the CUTPA claim to the jury on December 1, 1993,[8]

---

[8] The record reveals that December 1, 1993, was the sixth of ten days on which evidence was presented to the jury.

arguing that the CUTPA claim was a statutory issue that must be decided by the court. The trial court did not indicate at that time whether it would submit the CUTPA claim to the jury. The trial court heard further argument concerning the issue on December 8 and 9, 1993.[9] Evidence concluded on December 9. On December 20, 1993, the court placed on the record its decision to allow the jury to deliberate on the CUTPA claim.[10]

In *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 159, our Supreme Court rejected a claim by the defendants that they were entitled to a jury trial on their counterclaim alleging a CUTPA violation. The defendants asserted that article first, § 19, of the Connecticut constitution, which guarantees the right to a jury trial in all cases for which such a right existed at the time of the adoption of the constitutional provision in 1818, applied to their counterclaim. Id. The court determined that "CUTPA creates an essentially equitable cause of action not substantially similar to common law claims triable to a jury prior to 1818, [and, therefore, that] a jury trial is not constitutionally required for actions brought under CUTPA." Id., 155. Consequently, the court held that "[t]he trial court . . . properly granted the plaintiff's motion to strike the defendant's counterclaim from the jury docket." Id., 162.

Contrary to the defendants' assertions, however, *Associated Investment Co. Ltd. Partnership* does not stand for the proposition that because a party is not *entitled* to a jury trial on a CUTPA issue, a jury trial is not permissible. See *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 590 n.23, 657 A.2d 212 (1995). Practice Book § 307 provides that: "No equitable

---

[9] The defendants also presented this issue in their motion to set aside the verdict.

[10] The court apparently expressed its ruling to the parties off the record on December 19, 1993.

issues shall be tried to the jury except upon order of the court. *Upon the application of either party, the court may order any issue or issues of fact in any action demanding equitable relief to be tried by a jury,* and such application shall be deemed to be a request for a jury of six."[11] (Emphasis added.) Moreover, General Statutes § 52-218 provides: "Upon the application of either party, the court may order any issue or issues of fact in any action demanding equitable relief to be tried by a jury of six."

In this case, the defendants were the first to claim the case for the jury list. After several days of evidence, however, they objected to the submission of the CUTPA claim to the jury. Once a party has requested the trial court to submit issues of fact to a jury on an equitable claim, the court has the power under § 52-218 to submit such issues to the jury. *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.*, 190 Conn. 163, 170, 459 A.2d 1021 (1983);[12] see also *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 303, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). "The statute is discretionary . . . ." *Gaudio* v. *Gaudio*, supra, 303. "The jury forms no part of our equity system, though its use is permitted by statute upon issues of fact in equitable actions." *Doris* v. *McFarland*, 113 Conn. 594, 608, 156 A.2d 52 (1931).[13]

---

[11] Practice Book § 308 also provides in pertinent part: "A case presenting issues both in equity and law may be claimed for the jury list, but, *unless the court otherwise orders, only the issues at law shall be assigned for trial by the jury.* . . ." (Emphasis added.)

[12] In *Klar Crest Realty, Inc.*, the plaintiff sought damages and injunctive relief against the defendants for interference with its use of a road across certain property to which a defendant held title. "The plaintiff filed a general claim for a jury trial. The complaint, however, sought not only damages but also injunctive relief. Therefore, both legal and equitable issues were presented. In accordance with Practice Book § 308, the legal issue of damages was submitted to the jury. The court also exercised its authority under Practice Book § 307 to order certain issues of fact in an action demanding equitable relief to be tried to the jury." *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.*, supra, 190 Conn. 170.

[13] In *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 490–91 n.13, 656 A.2d 1009 (1995), the Supreme Court stated: "A party who wishes CUTPA

Under these circumstances, we conclude that the trial court properly submitted the CUTPA claim to the jury.[14]

## II

The defendants next claim that the trial court improperly refused to set aside the jury's verdict on the claim of fraud. The defendants first argue that, because the plaintiffs failed to provide any evidence that the defendants misrepresented facts, the plaintiffs failed to establish a prima facie case of fraud,[15] and, consequently, the trial court should not have submitted the fraud claim to the jury.[16] The defendants also argue that the jury's verdict was contrary to the evidence. We find no merit in these claims.

"The function of the trial court in setting a verdict aside, and the role of this court in reviewing that action, are well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . The

issues to be tried to the court . . . need only move to strike such a case from the jury list. If the parties fail to take such action, however, CUTPA issues may be tried to the jury. See, e.g., *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 579 A.2d 69 (1990)."

[14] We note that No. 95-123 of the 1995 Public Acts legislatively overruled *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 148. Public Act 95-123, § 1 (g), provides: "In any action brought by a person under this section there shall be a right to a jury trial except with respect to the award of punitive damages under subsection (a) of this section or the award of costs, reasonable attorneys' fees and injunctive or other equitable relief under subsection (d) of this section." The act did not apply to this case. See Public Acts 1995, No. 95-123, § 2.

[15] " 'The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.' *Billington* v. *Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991); *Maturo* v. *Gerard*, 196 Conn. 584, 494 A.2d 1199 (1985); *Paiva* v. *Vanech Heights Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970)." *Mitchell* v. *Mitchell*, 31 Conn. App. 331, 336, 625 A.2d 828 (1993).

[16] The defendants first made this objection at the close of the plaintiffs' case, but the trial court reserved its ruling.

trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . . *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 774, 607 A.2d 418 (1992).

"This court's inquiry focuses on the action of the trial court . . . . We determine whether the trial court abused its broad discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness . . . because the trial court, unlike this court, has had the opportunity to view the witnesses, to gauge their credibility and the weight of their evidence, and to detect those factors, if any, that could improperly have influenced the jury. . . . In doing so, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion. Id., 774–75." (Internal quotation marks omitted.) *Young* v. *Falk*, 34 Conn. App. 852, 861–62, 643 A.2d 1314 (1994).

The defendants contend that the plaintiffs failed to establish a prima facie case because they offered no evidence that the defendants made factual representations to the plaintiffs. The plaintiffs presented evidence that the defendants told Meyers that he had sufficient financial resources to operate a Cornwell dealership, that Cornwell would provide adequate training, that the plaintiffs could expect $65,000 in annual income from sales totaling $200,000, and that Cornwell would repurchase the tools if the dealership was terminated. The defendants assert that because the plaintiffs' evidence concerns statements of future occurrences only, they are opinions rather than representations of fact.

The requirement that a representation be made as a statement of fact "focuses on whether, under the circumstances surrounding the statement, the represen-

tation was intended as one of fact as distinguished from one of opinion." *Crowther* v. *Guidone,* 183 Conn. 464, 468, 441 A.2d 11 (1981). "It is sometimes difficult to determine whether a given statement is one of opinion or one of fact, inasmuch as the subject matter, the form of the statement, the surrounding circumstances, and the respective knowledge of the parties all have a bearing upon the question . . . . [E]ach case must in a large measure be adjudged upon its own facts." 37 Am. Jur. 2d, Fraud and Deceit § 46 (1968).

The defendants told the plaintiffs that they had sufficient investment capital to operate a Cornwell dealership and that they could expect $65,000 in annual income from $200,000 in total sales. Under the circumstances, we do not construe this, as the defendants do, as merely a representation of an opinion that the plaintiffs' dealership may succeed in the future. The defendants were representing to the plaintiffs that they in fact had sufficient capital to make a viable investment in a Cornwell dealership. See *Crowther* v. *Guidone,* supra, 183 Conn. 468 (experienced real estate salesman made representation of fact when he told buyers they could build house on subject property and then divide parcel, selling balance of property to others, in accordance with zoning regulations).

Moreover, the defendants' representations that Meyers would be provided with adequate training and that Cornwell would repurchase the tools if his dealership terminated could also be considered by the jury to be false representations. " '[A] promise to do an act in the future when coupled with a present intent not to fulfill it, is a false representation.' " *Mitchell* v. *Mitchell,* supra, 31 Conn. App. 336, quoting *Flaherty* v. *Schettino,* 136 Conn. 222, 226, 70 A.2d 151 (1949); see also *Smith* v. *Frank,* 165 Conn. 200, 201, 332 A.2d 76 (1973) (representations of fact that repairs would be made before closing on sale of house). We conclude that the trial court did

not abuse its discretion in submitting the claim of fraud to the jury.

The defendants nevertheless maintain that the verdict is contrary to the evidence. The defendants assert that the evidence demonstrated that the root causes of Meyers' failure as a Cornwell dealer was his own lack of effort, his inability to sell tools, and his failure to remain current on his payments. The defendants further assert that Meyers received considerable training and assistance from the defendants and that Cornwell repurchased his tools when his dealership was terminated. We conclude that it was within the trial court's discretion to submit these disputed issues of fact to the jury. Moreover, because the jury could reasonably and logically have reached its conclusions, the trial court properly refused to set aside the verdict on the fraud count.

### III

The defendants next claim that the trial court improperly admitted evidence of Cornwell dealer terminations and the testimony of former Cornwell dealers. The defendants argue that the evidence is irrelevant to the plaintiffs' claims of CUTPA and fraudulent misrepresentation. The defendants further argue that the testimony of former Cornwell dealers was inadmissible evidence of collateral misconduct. We disagree.

The defendants objected to the admission of the following evidence. Four dealers testified that they had been recruited by Phelan in 1987 and 1988. Phelan encouraged those dealers to invest in a Cornwell dealership knowing that their initial investment capital ranged from $10,000 to $57,000. Phelan told them that they possessed sufficient capital to be successful. All of the dealers were terminated within two years because they were unable to maintain their inventory of tools and

pay their bills to Cornwell. The dealers further testified that their bad debts from customers ranged from $3000 to $17,000, greatly exceeding Cornwell's estimated bad debts of $2000 to $3000 per year. In addition, the dealers testified that Cornwell refused to reimburse them for many tools at the conclusion of their dealerships. The plaintiffs also presented a listing of Cornwell dealers terminated nationwide from 1985 to 1989. The listing demonstrated the number of dealers terminated each year and the duration of each dealership at the time of termination.

"[T]he trial court's rulings on the admissibility of evidence are accorded great deference and will be disturbed on appeal only on a showing of clear abuse of discretion. . . . A trial court has broad discretion in its rulings on the relevance of evidence and in its determination of whether the probative value of evidence outweighs its prejudicial effect. Reversal is required only when there is an abuse of discretion or when an injustice has been done. . . . Evidence is considered relevant when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case." (Internal quotation marks omitted.) *State v. Payne*, 40 Conn. App. 1, 20, 669 A.2d 582 (1995); see also *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 192, 510 A.2d 972 (1986).

CUTPA "is aimed at eliminating or discouraging 'unfair methods of competition and unfair or deceptive acts or practices.'" *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 616–17, 440 A.2d 810 (1981), quoting General Statutes § 42-110b. In enacting CUTPA, our General Assembly "deliberately chose not to define the scope of unfair or deceptive acts proscribed . . . so that courts might develop a body of law responsive to the marketplace practices that actually generate such complaints." *Sportmen's Boating Corp. v. Hensley*, 192 Conn. 747, 755, 474 A.2d 780 (1984); see also *Associated*

*Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 157. "In deciding what constitutes an unfair or deceptive act or practice, courts of this state are encouraged to look to interpretations of the Federal Trade Commission Act; 15 U.S.C. § 45 (a) (1); rendered by both the federal trade commission and the federal courts." *Hinchliffe* v. *American Motors Corp.*, supra, 617.

In admitting the list of dealer terminations, the trial court relied on *Bailey Employment System, Inc.* v. *Hahn*, 545 F. Sup. 62, 71 (D. Conn. 1982), in which the District Court of Connecticut found that "[t]he attrition rate of franchises is certainly material information which would be likely to influence a prospective franchisee's decision to purchase." On the basis of its analysis of CUTPA, Connecticut case law, federal case law and a Federal Trade Commission regulation, the District Court held that the failure to disclose such information "was an unfair and deceptive act or practice under CUTPA." Id., 72.

The defendants in this case nevertheless argue that their nondisclosure of dealer terminations to the plaintiffs was irrelevant to the CUTPA claim. The dealer lists disclose that in 1985, 116 Cornwell dealers were terminated. Of the 116, sixty-nine had been dealers for less than two years and twenty-one for between two and three years. In 1986, 110 dealers were terminated, fifty-six within two years and nineteen during their third year. Similarly, in 1987, eighty-two dealers were terminated, thirty-nine within two years and seventeen during their third year. We conclude that the trial court did not abuse its discretion in admitting the list of dealer terminations on the CUTPA claim.

The defendants next argue that the list of dealer terminations was irrelevant to the claim of fraud because the defendants did not make an active misrepresenta-

tion to the plaintiffs regarding the turnover of its dealers. Phelan told the plaintiffs, however, that Meyers had sufficient investment capital to succeed as a Cornwell dealer. The defendants also indicated to the plaintiffs that the projected sales of Cornwell dealers, after a two year initial period, was $200,000 per year and yielded an annual income of $65,000. We conclude that the dealer terminations were relevant to a determination of whether the defendants knew their statements were true and whether they were made with the intent of inducing reliance.[17]

Finally, the defendants argue that the testimony of the former Cornwell dealers was irrelevant to the CUTPA and fraud claims and unduly prejudicial. The plaintiffs offered the testimony to show the representations that the defendants made to the former dealers and why the dealers were eventually terminated. The plaintiffs asserted that the testimony tended to show fraudulent intent and that the defendants made identical representations to the plaintiffs. "Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . ." (Internal quotation marks omitted.) *Russell* v. *Dean Witter Reynolds, Inc.*, supra, 200 Conn. 192; see also *Berry* v. *Loiseau*, 223 Conn. 786, 804, 614 A.2d 414 (1992).

In *Russell*, our Supreme Court concluded that the trial court did not abuse its discretion in admitting evidence of prior misconduct where the witnesses testified to conduct of a defendant that was close in time and character to the defendant's conduct toward the plaintiff. Id., 193. We conclude that the facts of this case merit the same result. Compare *Williams Ford, Inc.* v.

---

[17] See footnote 15.

*Hartford Courant Co.*, supra, 232 Conn. 570–72 (plaintiffs failed to provide adequate evidentiary foundation to establish logical connection). Likewise, in this case as in *Russell*, "the court did not abuse its discretion in finding that the probative value of the testimony outweighed its prejudicial effect. Indeed, the defendants have established no basis for a determination by this court that the admission of the testimony resulted in undue prejudice."[18] *Russell* v. *Dean Witter Reynolds, Inc.*, supra, 200 Conn. 193.

## IV

The defendants next claim that the trial court improperly charged the jury on the plaintiffs' burden of proof regarding the fraud count. The defendants argue that the trial court's charge that the fraud claim must be proven by "clear and satisfactory" evidence is insufficient. Our review of the record reveals that the trial court instructed the jury that the plaintiffs must establish fraudulent misrepresentation by "clear and satisfactory evidence" or "clear, precise, and unequivocal evidence." Our Supreme Court has described the requisite burden of proof in both manners. *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 540, 661 A.2d 530 (1995); *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 327–28, 593 A.2d 478 (1991); *J. Frederick Scholes Agency* v. *Mitchell*, 191 Conn. 353, 358, 464 A.2d 795 (1983). We find no merit in the defendants' claim.

## V

The defendants next claim that the trial court improperly charged the jury on the CUTPA claim. The defend-

---

[18] The defendants specifically identify the following testimony as prejudicial. A former dealer testified that Phelan said there would be "money to burn" and was instructed to tell a new recruit a false reason for his leaving the business. Another former dealer testified that Phelan told him not to talk to his predecessor. The defendants argue that no such representations were made to the plaintiffs. Phelan's conduct toward these former dealers, however, clearly is probative of his knowledge of the Cornwell business

ants argue that the trial court improperly charged the jury that the plaintiffs need not prove reliance as part of the CUTPA claim and that a CUTPA violation could be found if any one of the three criteria of the "cigarette rule"[19] was met. We find this claim to be without merit.

First, it is well established that " '[t]he CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain.' " *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 158, quoting *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 617, citing *Conaway* v. *Prestia*, 191 Conn. 484, 493, 464 A.2d 847 (1983); see also *Gold* v. *University of Bridgeport School of Law*, 19 Conn. App. 379, 381, 562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). Second, "[a]ll three criteria [of the cigarette rule] do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614 [and] 59,635 (1978)." (Internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 106, 612 A.2d 1130 (1992), quoting *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192

and his fraudulent intent. We conclude that the probative value of the former dealers' testimony outweighs any prejudicial effect of this testimony.

[19] In determining whether a practice violates CUTPA, we use the "cigarette rule" of the federal trade commission to determine when a practice is unfair. "[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . whether it is immoral, unethical, oppressive, or unscrupulous . . . whether it causes substantial injury to consumers [competitors or other businessmen]." (Internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 105–106, 612 A.2d 1130 (1992).

Conn. 558, 569 n.15, 473 A.2d 1185 (1984). We conclude therefore that the trial court did not improperly charge the jury on the CUTPA claim.

## VI

The defendants next claim that the jury verdict on the CUTPA count is contrary to the evidence because the plaintiffs did not prove that their injury could not reasonably be avoided. The third criterion of the cigarette rule, the substantial injury factor,[20] is satisfied only if an injury is substantial, is not outweighed by any countervailing benefits to consumers or competition that the practice produces, and could not reasonably be avoided. See *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, supra, 192 Conn. 569–70. Because we have concluded that the plaintiffs needed to establish only one of the cigarette rule criteria, it was not necessary for the plaintiffs to prove a substantial injury.[21]

## VII

The defendants finally claim that the trial court improperly denied their motion for a mistrial and motion in arrest of judgment based on jury misconduct. We disagree.

The following additional facts are relevant to our discussion of this issue. On December 22, 1993, during deliberations, the jury submitted the following question to the trial court: "What is the legal definition of fraud as opposed to negligence?" That afternoon the trial court instructed the jury accordingly. After the jury had been dismissed for the day, the courtroom clerk

---

[20] See footnote 19.

[21] The defendants do not independently address whether the evidence is otherwise sufficient to justify a jury verdict other than to argue that the dispute over the buy-back of tools is only a simple contract dispute not amounting to a CUTPA violation. Such a claim hardly challenges the sufficiency of the evidence presented at trial.

discovered a Black's Law Dictionary in the jury room opened to a page containing a definition of "fraud."[22]

On the following day, before deliberations resumed, the trial court reminded the jury that its verdict "must be solely based on the evidence which has been properly presented . . . and the law as given to you in my instructions . . . ." The court also specifically instructed the jurors that they were not to rely on any other source in seeking to understand or remind themselves of the legal standards to be applied. Moreover, the court asked the jurors if it was still correct to assume that they had not been unduly influenced by the extraneous materials, and they responded in the affirmative. Finally, the court repeated its instruction from the previous day distinguishing fraud from negligence.

Because there is no claim in this case that the plaintiffs occasioned the jury misconduct, the burden is on the defendants to show prejudice. *Williams* v. *Salamone*, 192 Conn. 116, 121, 470 A.2d 694 (1984); *Klingeman* v. *MacKay*, 25 Conn. App. 217, 219, 594 A.2d 18, cert. denied, 220 Conn. 910, 597 A.2d 333 (1991). Prejudice exists only when the misbehavior makes it probable that the jurors were influenced by it so as to render them unfair and prejudicial jurors. *Williams* v. *Salamone*, supra, 122; *Klingeman* v. *MacKay*, supra, 220. The trial court enjoys broad discretion in determining whether misconduct prejudiced the defendants. *State* v. *Brown*, 235 Conn. 502, 524, 668 A.2d 1288 (1995); *State* v. *Leonard*, 31 Conn. App. 178, 195, 623 A.2d 1052 (1993).

The trial court found that the jurors had collectively affirmed that the extraneous materials had not affected their ability to deliberate. In addition, the court repeated

---

[22] Black's Law Dictionary (5th Ed. 1979) was open to pages 594 and 595. Page 594 begins with "Frank-tenant" and page 595 ends with "Fraud, Statutes of."

the instruction that the jury had requested distinguishing fraud from negligence. Jurors are presumed, in the absence of evidence to the contrary, to follow the court's instructions. See, e.g., *Klingeman* v. *MacKay*, supra, 25 Conn. App. 220. We conclude that the trial court did not abuse its discretion in finding that the jury's use of the dictionary did not prejudice the defendants.

## VIII

In their appeal, the plaintiffs claim that the trial court improperly denied their motion to open and for reconsideration, arguing that in light of *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, supra, 230 Conn. 148, the trial court should have made its own factual determinations as to the CUTPA claim. " 'In all civil actions a requisite element of appealability is that the party claiming error be aggrieved by the decision of the trial court.' " *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 522, 662 A.2d 1281 (1995), quoting *Milford* v. *Local 1566, Council 4, AFSCME*, 200 Conn. 91, 95–96, 510 A.2d 177 (1986); see Practice Book § 4000. Pursuant to our earlier discussion of *Associated Investment Co. Ltd. Partnership*[23] and because the plaintiffs prevailed at trial, they were not aggrieved by the trial court's decision. *Windham Taxpayers Assn.* v. *Board of Selectmen*, supra, 523–24; *First Charter National Bank* v. *Ross*, 29 Conn. App. 667, 674–75, 617 A.2d 909 (1992), cert. dismissed, 228 Conn. 203, 635 A.2d 796 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[23] See part I of this opinion.