[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO STRIKE # 119
This matter is before the court on the defendant's motion to strike.
The following facts are pertinent to a determination of this motion:
The plaintiff, Leach Family Holdings, Inc. (Leach), filed an eight-count second revised complaint against the defendants, Raymark Industries, Inc. (Raymark), James F. Cobb, R.E. Laukhuff and Craig Smith as trustee of the Stratford Trust, on October 21, 1997.[1] The plaintiff alleges the following facts. On October 19, 1994, Leach and Raymark entered into an agreement concerning the purchase and sale of property located at 75 East Main Street, Stratford.[2] The agreement called for Leach as purchaser to make periodic deposits. In the event of a default by Raymark, CT Page 4971 Leach could terminate the agreement and recover all sums paid. The closing was to take place on or before September 29, 1995, and Leach would have the right to extend the date of the closing for a period not to exceed ninety days upon written notice to Raymark and payment of $100,000. The parties entered into six subsequent agreements extending the due dates for the payment of deposits, as well as extending the closing date to January 31, 1997. As of December 31, 1996, Leach had made the first five scheduled deposits.
Leach has brought causes of action in counts one through five against Raymark and Smith (the defendants) for breach of contract or promissory estoppel, specific performance, breach of the implied covenant of good faith and fair dealing, reasonable reliance and fraudulent misrepresentation based on an oral agreement made between the parties in December of 1996 granting Leach a renewable month-to-month extension of the purchase agreement, under which Raymark has failed to perform. In counts six and seven, Leach alleges causes of action against the defendants for breach of contract and breach of the implied covenant of good faith and fair dealing on the grounds that as of January 31, 1997, the Stratford Trust was in default under the purchase agreement because it failed to remove fundamental defects in the title, failed to close and failed to extend the closing date. Due to these defaults, Leach terminated the agreement on January 31, 1997 and made a demand pursuant to the purchase agreement for all sums paid, but the defendants have refused to return these monies. Leach alleges a cause of action in court eight under the Connecticut Unfair Trade Practices Act (CUTPA).
The defendants filed a motion to strike dated October 31, 1997. The defendants argue that counts one through eight should be struck because each relates to an oral contract involving the sale of real property, and therefore may not be maintained pursuant to the statute of frauds. In the alternative, the defendants move to strike counts three, five, seven and eight on the grounds that they do not state a claim upon which relief may be granted. The plaintiff filed a memorandum in opposition to the motion to strike dated November 14, 1997. The matter was heard by the court on November 17, 1997.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief car, be granted. In ruling on a CT Page 4972 motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576,580, 693 A.2d 293 (1997). "Courts permit the Statute of Frauds to be raised by a motion to strike when the alleged agreement falls squarely within these agreements required by the statute to be in writing." Boccuzzi v. Murphy, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 112957 (September 12, 1991, Karazin, J.).
A. Statute of Frauds
The defendants argue that the entire complaint should be struck because it is based on an oral promise to extend a purchase agreement involving the sale of real property. The defendants also argue that the written agreement precluded any modification that was not in writing. The defendants further contend that the written agreement prevails over inconsistent terms of the oral agreement. Leach counters that the oral agreement is not barred by the statute of frauds because the part performance doctrine is applicable. Leach also argues that the defendants are precluded from raising the defense of the statute of frauds based on the doctrine of equitable estoppel.
1. Doctrine of Part Performance
"The statute of frauds requires contracts for the conveyance of realty to be in writing. . . . We have repeatedly recognized that a contract is enforceable, despite the statute, when, subsequent to the making of the contract, there has been conduct that amounts to part performance." (Citation omitted.) McNeil v.Riccio, 45 Conn. App. 466, 470, 696 A.2d 1050 (1997). "[T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) Id. CT Page 4973
Leach has pleaded the following facts. In December of 1996, the defendants granted Leach a renewable month-to-month extension of the purchase agreement; the defendants represented that they could not memorialize the extension in writing; Leach was at all times ready, willing and able to perform under the purchase agreement; Leach justifiably and reasonably relied on the defendants' representations that the defendants would grant Leach a renewable month-to-month extension of the purchase agreement; and Leach has been damaged by its reliance.
When construing the pleadings in their most favorable light, Leach's conduct does not remove this alleged oral agreement from the statute of frauds through the part performance doctrine. "It is generally held that partial or even full payment of the purchase price for the sale of land under an oral contract does not take the case out of the statute of frauds. . . . The reason usually given for this rule is that the purchaser normally may have restitution of the consideration paid so that his predicament does not warrant the application of an equitable doctrine designed to prevent the statute of frauds itself from becoming an engine of fraud.'" (Citations omitted.) Breen v.Phelps, 186 Conn. 86, 94-95, 439 A.2d 1066 (1982). "The construction of substantial improvements on the land by the purchaser, however, has been regarded as the strongest and most unequivocal act of part performance by which an oral contract to purchase land is taken out of the statute of frauds." Id., 95. Because Leach has not alleged any act which can be construed as creating a substantial improvement to the property, the doctrine of part performance does not take the oral contract for the purchase of the subject property out of the statute or frauds.
2. Doctrine of Equitable Estoppel
Nevertheless, a reading of the pleaded facts support Leach's argument that the defendants are equitably estopped from raising the defense of the statute of frauds. "[T]here are two elements which must be established in order to find an estoppel: one party must do or say something that is intended or calculated to induce another into believing in the existence of certain facts and to act upon that belief, and the other party must thereby actually change his position or do some act to his injury which he otherwise would not have done. . . . Estoppel rests on the misleading conduct which results in prejudice to the other and absent such prejudice an estoppel cannot exist." (Citations CT Page 4974 omitted.) Middletown Commercial Associates Ltd. Partnership v.Middletown, 42 Conn. App. 426, 442, 680 A.2d 1350, cert. denied,239 Conn. 939, 684 A.2d 711 (1996). Here, in addition to the facts mentioned above, Leach has pleaded that the defendants knew when they made the oral promise of the month-to-month extension that their statements were false and that they were not going to renew the written agreement on January 31, 1997; Leach relied to its detriment on the defendants' false representations; and as a result Leach sustained substantial damages. Therefore, Leach has pleaded facts demonstrating that the defendants are equitably estopped from relying on the statute of frauds as a defense. To allow the defendants to assert the statute of frauds as a defense would turn the statute of frauds into an "engine of fraud, " when it is considered that Leach will be forced to forfeit all of the monies previously paid towards the purchase of the property pursuant to the six written extensions based on the parties' alleged oral agreement to extend the closing date past January 31, 1997.[3] Accordingly, the court finds that the defendants may not assert the statute of frauds as a defense, and the motion to strike the entire complaint on the basis of the statute of frauds should therefore be denied.
B. Fraudulent Misrepresentation
The defendants argue that Leach has not sufficiently pleaded a cause of action for fraudulent misrepresentation because it has failed to identify which defendant allegedly made the alleged misrepresentations, and whether that same defendant had control over the decision not to amend the purchase agreement on January 31, 1997. Leach argues that the complaint clearly states which defendants made the misrepresentations. Leach also argues that alleging which defendant had control over the situation is not necessary to pleading a cause of action for fraudulent misrepresentation.
"The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Billingtonv. Billington, 220 Conn. 212, 217, 595 A.2d 1377 (1991). "The requirement that a representation be made as a statement of fact focuses on whether, under the circumstances surrounding the statement, the representation was intended as one of fact as distinguished from one of opinion." (Citation omitted; internal CT Page 4975 quotation marks omitted.) Meyers v. Cornwell Quality Tools, Inc.,41 Conn. App. 19, 28-29, 674 A.2d 444 (1996). "[A] promise to do an act in the future when coupled with a present intent not to fulfill it, is a false representation." (Citation omitted; internal quotation marks omitted.) Mitchell v. Mitchell,31 Conn. App. 331, 336, 625 A.2d 828 (1993).
Leach has pleaded in count five that Raymark, Laukhuff and Cobb represented that Leach would be granted a renewable month-to-month extension of the purchase agreement; that in January of 1997 Raymark, Laukhuff and Cobb renewed their representation that Leach would be granted a renewable month-to-month extension of the purchase agreement; that Raymark and Cobb represented that they could not memorialize the extension in writing; and that the defendants knew when making these representations that they were false and that the defendants were not going to renew the purchase agreement on January 31, 1997.
It therefore appears that Leach has sufficiently pleaded a cause of action sounding in fraudulent misrepresentation in count five of the second revised complaint. The defendants who allegedly made the false representations are named within paragraphs 24 through 26 of count five. This is sufficient to survive the defendants' motion to strike. See Slitz v. PyramidCustom Home Corp. Of Connecticut, Superior Court, judicial District of Danbury at Danbury, Docket No. 323247 (April 4, 1997, Stodolink, J.) (where pleadings stated that the defendant and/or its agents made such representations in order to induce the plaintiffs to enter into the contracts; that the defendant and/or its agents knew or should have known that the representations were false; and that they have suffered damages as z result, court held such pleadings sufficient and defendant's motion to strike was denied). Accordingly, the defendants' motion to strike count five on the ground that a specific defendant is not identified is denied.
C. Breach of Implied Covenant of Good Faith and Fair Dealing
The defendants argue that there is no enforceable contract in existence which obligated the defendants to amend and extend the purchase agreement. Because there was no existing contract, the defendants argue, the duty of good faith and fair dealing does not arise, and counts three and seven should be struck. Leach argues that the oral agreement is not prohibited by the statute CT Page 4976 of frauds, and therefore the implied covenant attaches to it and count three is sufficient. Leach also argues that the pertinent contract for purposes of count seven is the written contract, the existence of which is undisputed by the defendants.
In Belliveau v. Curtain, Walls Windows, Inc., Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 458720 (January 20, 1994, Lavine, J.), the defendant argued that no contract ever came into existence. The court ruled that while this may in fact have been true, such a determination is not properly made on a motion to strike. Likewise, the court need not make this determination on the present motion to strike. Leach has alleged that the parties executed the "Sixth Amendment To Purchase Agreement" on December 16, 1996. Leach further alleged that in December of 1996, the defendants granted Leach a renewable month-to-month extension of the purchase agreement. Accordingly, when construing Leach's pleadings in their most favorable light, there are existing contracts which would support causes of action for breach of the implied covenant of good faith and fair dealing, and the defendants' motion to strike counts three and seven is denied.
D. CUTPA
The defendants argue that a simple breach of contract is not sufficient to establish a violation of CUTPA. The defendants also argue that they are not engaged in the sale of real estate, which is the single transaction at issue here. Leach argues that a breach of contract claim can support a cause of action under CUTPA.
"The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce . . . ."Krawiec v. Blake Manor Development Corp., 26 Conn. App. 601, 607,602 A.2d 1062 (1992). "[T]o allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a trade or business." Pergament v. Green,32 Conn. App. 644, 655, 630 A.2d 615, cert. denied, 228 Conn. 903,634 A.2d 296 (1993).[4]
"The Connecticut Unfair Trade Practices Act, General Statutes, § 42-110 (b)(a), has been construed liberally to apply to a single transaction the majority of times. However, usually when CUTPA is held to apply to a single transaction, the defendant is an entity or an individual engaged in a business CT Page 4977 activity which is at the heart of the complaint and the alleged violation." (Internal quotation marks omitted.) Jokl v. Watt,
Superior Court, judicial district of New Haven at New Haven, Docket No. 372000 (February 28, 1996, Gray, J.) (in action for breach of contract arising from the purchase of property sold to the plaintiffs by the defendants, court adopts the reasoning of those courts which have declined to hold CUTPA applicable to a single private transaction by a person not employed in the business of making the transaction in question). "CUTPA was designed to protect unwary consumers dealing with professional businesses or business people in a transaction which is part of that business." Mayer-Whittman Joint Ventures Inc. v. GuntherInternational, Ltd., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 134790 (October 21, 1994, Lewis, J.) (9 C.S.C.R. 1212, 1213). "CUTPA cannot be read to cover a single transaction between individuals which is not in the ordinary course of a trade or business. The intent of CUTPA is to punish those who conduct trade or business in an unscrupulous fashion." McCarthy v. Fingelly, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 268839 (May 28, 1991, Katz, J.) (4 Conn. L. Rptr. 177).
Here, Leach has not alleged facts indicating that the one-time sale of the subject property by the defendants was in the course of their business.[5] See Larson Skiba Associates,Inc. v. C C Package Store, Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 530707 (December 13, 1993, Corradino, J.) (10 Conn. L. Rptr. 441, 442) (CUTPA does not apply to one-time sale of businesses); Barraco v.Ethel Allen, Inc., Superior Court, judicial district of Stamford at Norwalk, Docket No. 081801 (February 6, 1992, Leheny, J.) (6 Conn. L. Rptr. 176) (neither seller nor purchaser alleged to be professionals in business of selling businesses ); Oppici v.Arata, Superior Court, judicial district of New Haven, Docket No. 273935 (August 30, 1991, Hadden, J.) (6 C.S.C.R. 906) (CUTPA language "in the conduct of any trade of business" becomes useless if private, one-time sales between parties are allowed; General Assembly could have drafted CUTPA to apply to single event if it chose to do so). Accordingly, the defendants' motion to strike count eight of the second revised complaint is granted.
By way of summary, the court finds that the defendants' motion to strike the entire second revised complaint is denied. Further, the defendants' motion to strike counts three, five and seven of the second revised complaint is denied. And finally the CT Page 4978 defendants' motion to strike count eight of the second revised complaint is granted.
The Court,
MAIOCCO, JUDGE