WILFRED MITCHELL *v.* SCOTT MITCHELL ET AL.
(11146)

O'CONNELL, LANDAU and SCHALLER, Js.

Argued January 7—decision released May 18, 1993

*Christopher G. Winans,* for the appellants (defendants).

*Eric N. Wellman,* for the appellee (plaintiff).

SCHALLER, J. The defendants appeal from the judgment, rendered after a court trial, upholding the plaintiff's claim of fraud. The defendants claim that the trial court improperly made legal and factual conclusions that (1) exceeded the scope of the complaint and (2) were unsupported by the evidence and clearly erroneous. We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff, Wilfred Mitchell, and his deceased wife are the parents of the defendants, Scott Mitchell and Lynda Maggi. The plaintiff and his wife owned the family residence now in dispute as tenants in common. They had lived at this residence since 1959, and the plaintiff had made mortgage payments on the property. On November 26, 1988, the plaintiff's wife died and, by will, devised her undivided one-half interest in the property to the defendants.

On November 29, 1988, the plaintiff met with Maggi and her husband at the family residence. Concern was expressed about the plaintiff's tendency to gamble, his future living plans and his ability to pay bills and expenses. At that time, the plaintiff's only assets were a bank account and the one-half interest in the house, and his only income was a pension of $1100 per month. In the course of the meeting, Maggi agreed that if the plaintiff transferred his one-half interest in the property to her and her brother, they would reserve the

plaintiff a life estate.[1] Mitchell had not attended the meeting but consented to the agreement between Maggi and their father.[2]

Shortly thereafter, Scott Mitchell instructed Attorney Stephen Gallagher to prepare a deed transferring the plaintiff's one-half interest to the defendants, but he failed to tell Gallagher to reserve a life estate for the plaintiff. On December 2, 1988, the plaintiff and Scott Mitchell met at Gallagher's office, where the plaintiff was induced into signing the deed. He believed that the deed contained the life estate that the defendants had promised him.

At the time the plaintiff signed the deed, Gallagher knew nothing about the prior agreement. He learned of the discussions *after* the conveyance of the quitclaim deed. The trial court further found that "[o]ne or two days later, Gallagher received another call from Scott discussing with him a *'lease for life'* for his father to live in the house." (Emphasis added.)

The plaintiff brought an action alleging fraud and seeking to set aside the conveyance and to recover damages. He claimed that the defendants had made untrue and false representations concerning the reservation of life use of the property, that he had believed those representations, and that he had relied on them when he executed the deed. The trial court found for the plaintiff and rendered judgment setting aside the conveyance to the defendants. In its judgment, the court stated, "[t]he court having heard the parties on Janu-

[1] This discussion also involved a dispute over a bank account that was the substance of the second count of the plaintiff's complaint. In this appeal, the plaintiff has not pursued the trial court's rejection of his second claim.

[2] The plaintiff testified that Scott Mitchell had also spoken with him and had recommended the transfer of the plaintiff's one-half interest in the property to him and Maggi. According to the plaintiff's testimony, Mitchell assured him life use of the property.

ary 15 and 16, 1992, finds the issues as to the first count in fraud for the plaintiff."[3] This appeal followed.

## I

The defendants first claim that the trial court's decision exceeded the scope of the complaint. At trial, both parties litigated the issue of actual fraud without pursuing a theory of constructive fraud. In its memorandum of decision, however, the trial court injected the issue of whether the facts supported an action for constructive fraud and concluded that, in fact, the facts did support such a theory.

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint. . . . A plaintiff may not allege one cause of action and recover upon another. Facts found but not averred cannot be made the basis for a recovery. . . ." (Citations omitted; internal quotation marks omitted.) *Sampiere* v. *Zaretsky,* 26 Conn. App. 490, 492, 602 A.2d 1037, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992).

The burden of proof and the elements necessary in an action for constructive fraud differ markedly from the prerequisites to liability for actual fraud. The breach of a confidential or special relationship forms the basis for liability under the doctrine of constructive fraud. *Worobey* v. *Sibieth,* 136 Conn. 352, 71 A.2d 80 (1949);

---

[3] In the first count of the complaint, the plaintiff claimed the following:

"3. On or about December 2, 1988, the Defendants, knowing of the plaintiff's incapacity, and desiring to take advantage thereof for the purpose of defrauding the plaintiff, procured the Plaintiff's signature to a deed conveying the land to the Defendants.

"4. The Defendants, knowing the representations to be untrue, falsely represented to the Plaintiff that he would retain a life use in said premises.

"5. The Plaintiff, because of his grief stricken condition, believed the representations to be true and relying on them executed the deed which failed to contain the life use restriction promised to the Plaintiff . . . ."

*Terry* v. *Terry,* 302 N.C. 77, 83, 273 S.E.2d 674 (1981). The plaintiff must establish the existence of a confidential or special relationship. *Dunham* v. *Dunham,* 204 Conn. 303, 322, 528 A.2d 1123 (1987); *Worobey* v. *Sibieth,* supra, 359. Once such a relationship is found to exist, the burden shifts to the fiduciary to prove fair dealing by clear and convincing evidence. *Dunham* v. *Dunham,* supra, 322–23; *Alaimo* v. *Royer,* 188 Conn. 36, 37, 448 A.2d 207 (1982); *Worobey* v. *Sibieth,* supra; *Oakhill Associates* v. *D'Amato,* 30 Conn. App. 356, 358, 620 A.2d 1294 (1993).

Actual fraud, by contrast, is not established by virtue of a confidential relationship. "Connecticut case law firmly establishes that fraud must be proven by a standard more exacting than a fair preponderance of the evidence." (Internal quotation marks omitted.) *J. Frederick Scholes Agency* v. *Mitchell,* 191 Conn. 353, 358, 464 A.2d 795 (1983). "A claim of fraud must be proven by 'clear and satisfactory evidence.' " *Regis* v. *Connecticut Real Estate Investors Balanced Fund, Inc.,* 28 Conn. App. 760, 768, 613 A.2d 321, cert. denied, 224 Conn. 907, 615 A.2d 1048 (1992).

In light of these differences, we agree with the defendants that the trial court's analysis of constructive fraud exceeded the scope of the plaintiff's cause of action. We are not persuaded, however, that the trial court's analysis in this regard undermined its ultimate judgment. As previously stated, the trial court veered into a discussion of constructive fraud in its memorandum of decision. Before this departure, however, the court accurately recited the law of actual fraud and the burden of proof. The court also made findings relating to the plaintiff's claim of fraud. In the final analysis, moreover, the trial court's judgment expressly accepted the plaintiff's fraud claim as pleaded in the complaint. Because, in essence, the trial court concluded that the plaintiff proved *both* actual and constructive fraud, the

inappropriateness of the constructive fraud analysis is of no consequence in this case.

## II

The more pertinent question is whether the court's judgment is clearly erroneous. This brings us to the defendants' second claim on appeal. Practice Book § 4061 provides that "[t]he court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law." "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged, we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The trial court correctly stated the basic elements of an action for actual fraud. "The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington* v. *Billington,* 220 Conn. 212, 217, 595 A.2d 1377 (1991); *Maturo* v. *Gerard,* 196 Conn. 584, 494 A.2d 1199 (1985); *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69 (1970). "[A] promise to do an act in the future when coupled with a present intent not to fulfill it, is a false representation." *Flaherty* v. *Schettino,* 136 Conn. 222, 226, 70 A.2d 151 (1949). In addition, the trial court properly

explained that an action for fraud requires proof by clear and convincing evidence. *Alaimo* v. *Royer,* supra, 39.

Against this legal backdrop, the court made factual findings that are fully substantiated by the evidence. First, the court found that Maggi[4] and the plaintiff agreed that he would enjoy life use of the property. The record is replete with evidence substantiating this finding. The plaintiff testified, for example, that Maggi and Mitchell assured him life use in exchange for the transfer of the property.

The circumstances surrounding the procurement of the deed support a reasonable inference of intent to defraud. "[O]rdinarily, intent can only be proved by circumstantial evidence; it may be and usually is inferred from the defendant's conduct." (Internal quotation marks omitted.) *Kelley* v. *Bonney,* 221 Conn. 549, 583, 606 A.2d 693 (1992). In less than a week, the defendants first agreed to give the plaintiff a life estate in exchange for his interest in the property and then succeeded in effectuating the conveyance via quitclaim deed without any provision for a life estate. Because these arrangements were initiated and acted upon in such a brief period of time, the trial court reasonably could have concluded that the absence of the life estate term was not an innocent omission. Further, Scott had ample opportunity to arrange for a revised deed when he discussed the omission with Gallagher two days after the execution of the deed. Instead, Scott discussed a "lease for life," a markedly diminished property interest. We conclude that the trial court reasonably could have inferred from the evidence that the defendants intended to defraud the plaintiff.

The court also found that the representations were made under circumstances that induced the plaintiff

---

[4] While the court did not explicitly find that Scott Mitchell made representations concerning life use, the court was convinced that he at least had consented to the agreement.

to rely on them. The plaintiff testified that he would not have signed the deed had the defendants not agreed to reserve him a life estate. The trial court was entitled to credit this testimony and find that the plaintiff relied on the defendants' representations.

Finally, it is clear that the plaintiff was injured as a result of his reliance on the false representation because the transfer of his property without a life estate would deprive him of his residence. It would be grossly unfair to permit the defendants to retain the property that they acquired by virtue of a material misrepresentation. *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 346, 232 A.2d 307 (1967).

From our review of the entire record, we conclude that the trial court's findings and conclusions as to actual fraud were amply supported by the evidence and are not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.