CLETA PERGAMENT ET AL. *v.* BAERBEL GREEN ET AL.
(11519)

DUPONT, C. J., O'CONNELL and SCHALLER, Js.

Argued June 7—decision released August 24, 1993

*David S. Golub,* with whom was *Jonathan M. Levine,* for the appellants (defendants).

*Stephen A. Finn,* with whom, on the brief, was *Steven M. Frederick,* for the appellees (plaintiffs).

SCHALLER, J. The defendants appeal from the judgment, rendered after a court trial, in favor of the plaintiffs[1] with respect to their claims of breach of contract, fraud and unfair trade practices in violation of General Statutes § 42-110a et seq. (CUTPA). The dispositive issue in this case is whether the trial court improperly determined that the defendant owed the plaintiff a fiduciary duty and that the defendant breached that duty. We reverse the judgment of the trial court and remand the case for a new trial.

The following facts are pertinent to this appeal. The plaintiff was the founder and owner of La Bagatelle, a retail jewelry business. She operated the business through two stores located in New Canaan and Stamford. From 1980 until August 2, 1985, the defendant worked, first, as a sales clerk and then as the manager of La Bagatelle. J. Elliot Smith owned the building in New Canaan and leased the premises to the plaintiff. By its express terms, the lease expired on August 31, 1985.

The parties entered into discussions pertaining to the purchase of the jewelry business by the defendant. These discussions were reduced to writing in the form of a binder agreement signed by the parties on April 15,

---

[1] Because the plaintiffs' claims stem chiefly from a transaction involving the named plaintiff, Cleta Pergament, and the named defendant, Baerbel Green, we will refer to the named parties as the plaintiff and the defendant.

1985. Pursuant to that agreement, the defendant agreed to pay $95,000 for the business, $475 of which was paid on the signing of the agreement.[2] The agreement was also conditioned on the defendant's ability to obtain a lease for the existing store premises at 17 South Avenue in New Canaan for a period of at least five years, the lease to commence on or before September 1, 1985. This condition was particularly important because the existing lease expired on August 31, 1985.

In April, 1985, the plaintiff wrote to the landlord, Smith, asking him to negotiate directly with the defendant for a lease of the premises.[3] In a letter dated May 13, 1985, the defendant wrote to Smith and explained her interest in obtaining a lease of the premises. These efforts, however, did not result in the procurement of a lease, leaving the condition in the agreement unfulfilled.

In early July, the plaintiff and the defendant discussed the progress of the lease negotiations. The defendant indicated that she had heard rumors that the landlord intended to sell the building in which the jewelry store was located.[4] The plaintiff became increasingly apprehensive about whether the landlord would enter into a lease agreement with the defendant. On July 13, 1993, the plaintiff contacted the landlord's wife and learned that the lease proposal was

[2] Additional terms in the agreement included, a down payment of 10 percent, which was later reduced, and a contingency in which the contract was conditioned on obtaining financing.

[3] In addition to writing the letter, the plaintiff testified as follows:

"[Plaintiff's Counsel]: Who did you believe was going to undertake the obligation of getting a lease after you had written these letters?

"[Plaintiff]: Mrs. Green [the defendant].

"[Plaintiff's Counsel]: And why did you believe that was going to happen?

"[Plaintiff]: Well, to begin with, *I wouldn't want to get the lease.* The lease was to be in her name. We had agreed upon that. And *two people can't negotiate a lease.*" (Emphasis added.)

[4] These rumors never proved to be true.

forthcoming. The plaintiff relayed the substance of this conversation to the defendant.

On July 22, 1985, the plaintiff prepared a document for the defendant that listed four options regarding the sale of the business. The document stated that the defendant could (1) "[e]xecute original contract with exceptions as stated," (2) "[b]uy jewelry & fixtures only," (3) "[b]uy name (with jewelry & fixtures)," and (4) "[b]uy nothing." The document further stated that July 27 was the "date for answer."

On July 25, 1985, the defendant attempted to telephone Smith. She spoke with his wife who assured the defendant that the lease was "on the way." The next day, the plaintiff conferred with the defendant, and the parties discussed the four options set forth in the July 22 document. At that time, the defendant elected to "[b]uy nothing." She did so without mentioning that, on the previous day, Smith's wife had assured her of the prompt arrival of the lease proposal.

On July 27, 1985, the plaintiff attempted to telephone the landlord, but could reach only his wife. She informed the plaintiff of her most recent telephone conversation with the defendant and that she had assured the defendant that the lease was on the way.

After her conversation with the landlord's wife, the plaintiff confronted the defendant, upset that the defendant had not mentioned the assurances of July 25. The plaintiff explained that she now intended to secure the lease for herself. Subsequently, the defendant received a lease offer from Smith. She declined, however, to revive the proposed sale of the jewelry business. On August 2, 1985, the plaintiff terminated the defendant's employment with La Bagatelle. The defendant then continued to negotiate a lease agreement with Smith. On August 15, 1985, these negotia-

tions culminated in an agreement with Smith for the lease of property at 17 South Avenue.

In January, 1992, the plaintiff filed a substitute complaint alleging (1) breach of contract, (2) intentional nondisclosure, (3) misrepresentation, (4) unjust enrichment, (5) unfair and deceptive trade practices, and (6) tortious interference with the plaintiff's attempt to renew a lease agreement. The case proceeded to trial.

In the course of the trial, breach of fiduciary duty emerged as an issue. It was first indicated that the plaintiff's claims might involve a breach of fiduciary duty on the first day of trial. When the plaintiff indicated that breach of fiduciary duty was involved, the defendant responded, "I am hearing a breach of fiduciary duty claim that—I have the complaint in front of me, Your Honor. There are six counts in this complaint. It is not here." The court responded, "Don't bother with that . . . . I am not going to allow [the evidence] . . . for anything that flows from a breach of fiduciary duty at this point in time."

The issue of breach of fiduciary duty again reared its head on the third and final day of trial:

"The Court: Let me ask you. Did [the defendant] have a duty to [the plaintiff] to brief her on the entire conversation that she had with Mrs. Smith?

"[Defense Counsel]: I don't believe so. No.

"The Court: That is where I disagree with you. I think she did. And that is the crux of the case as far as I am concerned . . . .

"[Defense Counsel]: Your Honor, just on this issue, there is no claim—the complaint has six counts, Your Honor. There is no claim of breach of fiduciary duty.

"The Court: *Well, there doesn't have to be if there is a principal-agent relationship."* (Emphasis added.)

Ultimately, the court rendered judgment for the plaintiff and issued an accompanying memorandum of decision. In its memorandum, the court found that the defendant had failed to sustain her burden of proving fair dealing and, thus, that the defendant had breached her fiduciary duty to the plaintiff. With respect to the breach of contract claim, the court found for the plaintiff, reasoning that the claim was "inextricably bound up with a consideration of the legal relationship" of the parties. Similarly, the court determined that the defendant, as a fiduciary, had a duty to speak to the plaintiff regarding assurances by the landlord's wife that the lease was forthcoming. In this regard, the court emphasized that "[t]he law demands a high standard of conduct from fiduciaries in situations dealing with nondisclosure." Finally, the court found that the defendant engaged in unfair and deceptive acts in violation of § 42-110a et seq.[5]

In its memorandum of decision, the court discussed the issue of damages. Having determined that the defendant breached the contract, the court awarded the plaintiff $71,013.45 representing the benefit of the bargain. The court further awarded the plaintiff prejudgment interest in the amount of $49,461.09. Pursuant to CUTPA, the court awarded the plaintiff $66,000 in attorney's fees and costs. From this judgment, the defendant appealed.

I

The defendant challenges the propriety of the trial court's finding as to breach of fiduciary duty. She posits that, because the plaintiff never alleged breach of fiduciary duty, the trial court improperly injected this theory of liability into the case. She also asserts that the

---

[5] In view of its ruling with respect to the other claims, the trial court did not reach the claim of tortious interference with the plaintiff's attempt to renew the lease.

court's finding that the defendant owed the plaintiff a fiduciary duty permeates the court's ultimate determination that the defendant was liable for breach of contract and fraud.[6] We agree.

A fundamental tenet in our law is that the plaintiff's complaint defines the dimensions of the issues to be litigated. "[T]he right of a plaintiff to recover is limited to the allegations of [her] complaint. . . ." (Citations omitted; internal quotation marks omitted.) *Robert S. Weiss & Associates, Inc.* v. *Wiederlight,* 208 Conn. 525, 537, 546 A.2d 216 (1988); *Vinchiarello* v. *Kathuria,* 18 Conn. App. 377, 383, 558 A.2d 262 (1989). " 'The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A plaintiff may not allege one cause of action and recover upon another. Facts found but not averred cannot be made the basis for a recovery. . . . (Citations omitted; internal quotation marks omitted.)' " *Mitchell* v. *Mitchell,* 31 Conn. App. 331, 334, 625 A.2d 828 (1993). "A judgment in the absence of written pleadings defining the issues would not merely be erroneous, it would be void." *Telesco* v. *Telesco,* 187 Conn. 715, 720, 447 A.2d 752 (1982); *Vinchiarello* v. *Kathuria,* supra, 384; *Tehrani* v. *Century Medical Center,* 7 Conn. App. 301, 308, 508 A.2d 814 (1986).

Our courts have further noted the requirements necessary in order to plead properly breach of fiduciary duty. For example, in *Zuch* v. *Connecticut Bank & Trust Co.,* 5 Conn. App. 457, 463–64, 500 A.2d 565 (1985), the plaintiff alleged only that, pursuant to the trust agreement, the defendant undertook a fiduciary relationship to manage, invest and distribute the trust funds for the benefit of the plaintiff. The trial court ruled that the scope of the accounting should include

---

[6] We note that the plaintiff's claim of fraud includes the allegations of nondisclosure and misrepresentation.

a *justification by the defendant* of its investment policies used to manage the trust. Id., 463. We held that the trial court's ruling exceeded the scope of the allegations of the complaint and injected the issue of breach of fiduciary duty. Id., 463–64. Absent an allegation of breach of fiduciary duty, that case concerned only the scope of an accounting due by a trustee. Id., 464. Under existing law, therefore, a plaintiff must allege breach of fiduciary duty with specificity before liability can attach on such grounds. See also *Solomon* v. *Aberman,* 196 Conn. 359, 385–86 n.21, 493 A.2d 193 (1985) (complaint alleging tortious interference with contractual and beneficial relationships does not include implicitly a claim of breach of fiduciary obligations).

The importance of a specific allegation of breach of fiduciary duty is evident in the fact that the existence of a fiduciary duty shifts the burden of proof to the fiduciary. "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham,* 204 Conn. 303, 322–23, 528 A.2d 1123 (1987).

In the present case, it is undisputed that the plaintiff did not allege breach of fiduciary duty in her complaint. Nevertheless, breach of fiduciary duty formed the basis of the trial court's judgment. The court specifically found "both a principal-agent and a fiduciary relationship between the parties and that the defendant . . . failed to sustain the burden of proof . . . ." Clearly this digression prejudiced the defendant. The injection of the fiduciary duty issue resulted in a reallocation of the burden of proof that required the defend-

ant to prove fair dealing. Moreover, on the first day of trial, the court assured the defendant that breach of fiduciary duty was not an issue in the case. Throughout most of the trial, therefore, the defendant was unaware that breach of fiduciary duty was a critical issue. We conclude that the trial court improperly based its decision on breach of fiduciary duty.

The next question is whether the trial court's finding as to breach of fiduciary duty affected the remaining aspects of the judgment. In this regard, we recently upheld a trial court judgment rendered on a claim of fraud, despite our conclusion that the court's analysis based on constructive fraud exceeded the scope of the plaintiff's complaint. *Mitchell* v. *Mitchell,* supra. In that case, however, because the trial court determined that the plaintiff proved *both* actual *and* constructive fraud, the inappropriateness of the constructive fraud discussion was immaterial. Id., 335–36. The issue in the present case, therefore, is whether the trial court's judgment depends on the trial court's improper determination that the defendant breached her fiduciary duty to the plaintiff. A close reading of the memorandum of decision reveals that the trial court's findings of breach of contract and fraud are wholly dependent on the court's fiduciary duty analysis.

There is no doubt that the court's finding with respect to breach of fiduciary duty influenced the concomitant finding that the defendant breached the contract to buy the jewelry business. The trial court stated in its memorandum of decision, "Whether the defendant's conduct constituted a breach of contract is *inextricably bound up* with a consideration of the legal relationship that the plaintiff and the defendant occupied with one another." The court then directed its attention to the issue of fiduciary duty and concluded that the defendant had failed to sustain her burden of proving fair deal-

ing. We conclude that the court's improper reliance on breach of fiduciary duty affected its breach of contract finding.

Similarly, the trial court's focus on the fiduciary duty issue is an integral aspect of its finding of fraud. Again, we refer to the memorandum of decision wherein the court found as follows: "In view of the court's finding of an agency and therefore a *fiduciary relationship,* the defendant clearly had a *duty to speak* to the plaintiff concerning this matter." (Emphasis added.) In discussing the defendant's election to rescind the contract pursuant to the June 22, 1985 options, the trial court further stated, "the defendant's right to rescind was vitiated by her breach of fiduciary duty by failing to disclose the contents of her conversation of July 25 with the landlord." On this basis, the trial court ultimately found that the defendant's nondisclosure and misrepresentation constituted fraud. Thus, the trial court's finding of fraud hinged on the finding of breach of fiduciary duty.

As the trial court noted, "It is unnecessary to allege any promise or duty that the law implies from the facts pleaded. Practice Book § 110. In this case, however, the employer-employee relationship does not necessarily imply the existence of a fiduciary obligation."[7]

We also recognize that a party's failure to object to any variance between the pleadings and proof constitutes a waiver of any objection. *Tedesco* v. *Stamford,*

---

[7] Furthermore, while evidence indicated that the plaintiff asked the landlord to negotiate the lease directly with the defendant, this does not necessarily indicate an agency relationship between the parties. The plaintiff's testimony indicated that she did not want to be a party to the lease negotiations because the lease was to be in the defendant's name. See footnote 3. Thus, the defendant was not negotiating the lease on behalf of the plaintiff, though the plaintiff stood to benefit from the ultimate sale of the business.

215 Conn. 450, 461, 576 A.2d 1273 (1990). Furthermore, "[o]nly material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment. . . ." (Internal quotation marks omitted.) Id. On the first day of trial, when it appeared that the plaintiff might be introducing evidence to establish breach of fiduciary duty, the defendant expressed her concern to the court that any such proof would exceed the scope of the complaint. In response, the trial court assured the defendant that the evidence would not be admitted "for anything that flows from a breach of fiduciary duty." Then, on the third and final day of trial, it became apparent that, in the trial court's view, breach of fiduciary duty lay at the heart of the case. In view of the trial court's assurances, we cannot conclude on these facts that the defendant failed to object to the variance between the pleadings and the proof. Clearly the court's approach to the issue of fiduciary duty prejudiced the defendant, since a finding of fiduciary duty shifts the burden of proof to the fiduciary. *Dunham* v. *Dunham*, supra.

We conclude that the trial court improperly rendered judgment on the basis of a legal theory that the plaintiff never asserted in the complaint, namely, breach of fiduciary duty. Because the trial court based its judgment on breach of fiduciary duty, a matter not pleaded by the plaintiff, we reverse the judgment and remand the case for a new trial. See, e.g., *Lundberg* v. *Kovacs*, 172 Conn. 229, 233, 374 A.2d 201 (1977) (setting aside the judgment and ordering a *new trial* where variance between pleading and proof was neither immaterial, nor corrected by amendment or waived); *Francis* v. *Hollauer*, 1 Conn. App. 693, 695–97, 475 A.2d 326 (1984) (setting aside judgment and ordering a *new trial*

where judgment was based on a cause of action different from any alleged in the complaint).[8]

## II

The defendant also claims that the trial court improperly applied CUTPA in awarding the plaintiff's attorney's fees and costs. According to the defendant, the one time sale of a small retail business does not constitute a trade practice within the aegis of CUTPA. We do not consider this issue because the plaintiff has not pleaded properly a cause of action under CUTPA.

It is well settled that "[i]f the facts that the plaintiff alleges are insufficient to frame [the] causes of action, the plaintiff cannot prevail." *Quimby* v. *Kimberly Clark Corporation,* 28 Conn. App. 660, 669, 613 A.2d 838 (1992), citing *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 532, 461 A.2d 1369 (1983). "[T]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint." *Simsbury Turnpike Realty Co.* v. *Great Atlantic & Pacific Tea Co.,* 39 Conn. Sup. 367, 369, 465 A.2d 331 (1983) (Appellate Session). "In order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a 'trade or business.' See General Statutes § 42-110b; *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 354, 525 A.2d 57 (1987)." *Quimby* v. *Kimberly Clark Corporation,* supra.

In the present case, the plaintiff's complaint is devoid of any allegation that the acts complained of were performed in a "trade or business." Having failed to frame a cause of action under CUTPA, the plaintiff cannot

---

[8] In this case, a remand for new trial is particularly appropriate. An outright reversal requiring judgment in favor of the defendant would be unfair to the plaintiff, since the trial court is largely responsible for the improper injection of the fiduciary duty issue.

prevail on this claim. Accordingly, we do not address the issue of whether CUTPA applies to the one time purchase and sale of a small business.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.