[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case comes to this court as a court-side trial wherein the plaintiff in its second revised complaint, pleading #113 dated May 15, 1997, alleges in five counts a complaint against the defendants. The first count sounds in breach of contract. The second count sounds in misrepresentation. The third count sounds in fraud. The fourth count sounds in tortious interference. The fifth count sounds in Connecticut Unfair Trade Practices. In response thereto, the defendants on May 23, 1997 filed an answer and special defenses denying and leaving the plaintiff to its proof. A special defense stated that the plaintiff has failed to state a cause of action upon which relief can be granted. The pleadings were closed by the reply of the plaintiff dated July 5th wherein the allegations of the special defense were denied.
 FACTS
The plaintiff's claims arise from an exclusive listing agreement entered into by the plaintiff and John Rieman (hereinafter Rieman) acting on behalf of Independence Marine Corporation (hereinafter IMC). The agreement granted the plaintiff the sole exclusive right to act as a real estate agent for IMC to sell, lease or exchange certain waterfront property in Greenwich. The agreement called for a commission of 8% of the purchase price to be paid upon the sale of the property. The agreement also called for an 8% commission to be paid on any exchange involving the property. There is no dispute as to the genuineness or validity of the exclusive listing agreement. What CT Page 7708 is in dispute in this case is that the defendants claim that no sale or exchange has occurred and therefore no commission is due. The defendant Rieman also claims that he is not personally liable for his actions.
In September 1994, IMC acquired from the FDIC the subject premises. To make the purchase, $500,000 was invested by Ivan and Helga Pour. $2.6 million dollars were needed to close the transaction and that money was obtained from K.B. Weisman. Weisman was given a first mortgage on the property, a personal guarantee by Rieman and a lien of $750,000 on Rieman's brokerage account at Hambrecht and Quist. In December 1994 and January 1995, the Pours invested additional money, thereby raising their investment to $650,000 and were given a second mortgage on the property for $650,000.
In putting together this purchase, Rieman contemplated selling off an adjoining parcel for $1 million to $1.5 million dollars and to make the first mortgage into long terms financing and to fix the marina up and sell it for a substantial profit. In the summer of 1995, financial problems surfaced at IMC. By December 1995 the corporation was seriously behind in its mortgage payments to Weisman. Consequently, the defendants asked the plaintiff in his capacity as an established real estate broker in Greenwich, to assist them in marketing the property. In December 1995 the plaintiff brought into the picture Richard Kral to attempt to purchase the property. It was not until March 1996 that the plaintiff was given the exclusive listing on the property. The listing gave the plaintiff the exclusive right to sell, lease or exchange the property until October 30, 1996.
In mid-March 1996, Kral, d/b/a RFK Greenwich Enterprises, had purchased the first mortgage from Weisman. (Exhibit #10). On April 17, 1996, the Pours began a foreclosure action on the property. On June 17, 1996 the Pours obtained a judgment of strict foreclosure against IMC. On June 19, 1996 title to the premises became absolute in the Pours. (Exhibit #12). On October 4, 1996 RFK Enterprises obtained title by Quit Claim Deed from the Pours. (Exhibit #13).
This case came to this court as a court-side trial on those issues. It is undisputed that on March 21, 1996, Silvio Benedetto and IMC entered into an exclusive right to sell lease or exchange. It was signed by the plaintiff Silvio Benedetto Associates by Silvio Benedetto and by John Rieman as vice president of IMC. CT Page 7709 (Exhibit #1). It is clear that the plaintiff was due a commission if any one of the three events took place during the time of the listing which expired on October 30, 1996.
It is also clear that on June 17, 1996 a judgment of strict foreclosure was obtained by Ivan Pour and Helga Pour against IMC. The plaintiff claims that despite language in the listing that a commission was due on a sale, lease or exchange, a commission was also due on foreclosure. In particular, this foreclosure. The plaintiff cites no Connecticut cases that say a foreclosure is a sale, lease or exchange. In fact, Connecticut is a title state not a lien state. By that it is meant, that when the mortgage was placed on the property in favor of Pour, title was actually conveyed to Pour subject to defeasence provisions.
When the listing agreement was entered into, legal title was already in Pour. Thus, in Connecticut a foreclosure cannot be a sale. This explains the absence of Connecticut cases that address that issue. This court finds that the foreclosure which took place on June 17, 1996 was not such an event that was covered under the exclusive right to sell agreement (Exhibit #1) and that the plaintiff was not entitled to a commission.
The listing agreement was prepared by the plaintiff. The language of his contract should be strictly construed against him. Connecticut law requires that ambiguities in the contract are to be resolved against the party responsible for its drafting. Hartford Electric Applications of Thermalux, Inc. v.Alden, 169 Conn. 177 (1975); Cody v. Remington Electric Shavers,179 Conn. 494 (1980). In addition, the particular language of the agreement must prevail over the general language of the agreement. Miller Brothers Construction Company v. Maryland GasCompany, 113 Conn. 504 (1931). This analysis is dispositive of the first count breach of contract.
Further, it is alleged in the first count that the defendant Rieman is individually responsible in addition to the corporation. It is clear from the evidence that Rieman was acting for the corporation. Here there is an attempt to pierce the corporate veil and hold Rieman personally, responsible. The Connecticut law allows the court to disregard the corporate entity and pierce the corporate veil only where the plaintiff has proven control, not mere majority or complete stock control, but complete domination not only of the finances but of the policy and business practice in respect to the transaction attacked so CT Page 7710 that the corporate entity as to the transaction in question had at the time no separate mind, will or existence of its own that such control was used by the defendant to commit a fraud or a wrong, to perpetuate a violation of statutory or other positive legal duty or dishonest or unjust act in contravention of the plaintiff' s legal right; and that such control and breach of duty proximately caused the injury or unjust lost complained of.Kregos v. Latest Line, Inc., 929 F. Sup. 600 (D. Conn. 1996);United Electric Contractors, Inc. v. Progress Builders Inc.,26 Conn. App. 749 (1992).
The evidence in this case fails to meet the burden necessary to pierce the corporate veil. In fact, testimony of both Benedetto and Friedmann established that Rieman did not have control of the finances of the marina operation, and that some were being controlled by Al Constantine, the on-site manager of the marina.
As to the second count, the plaintiff alleges after repeating paragraphs 1 through 9 of the first count, that Rieman on his own behalf and on behalf of IMC made statements of material fact to the plaintiff upon which the plaintiff reasonably relied. Paragraph #11 alleges that they were made knowingly and falsely with the intent to induce the plaintiff to act and perform services other than it would have acted but for Rieman's misrepresentation of fact.
The proof at trial showed that none of the three representations of Rieman were made falsely but were rather accurate representations. Rieman is and always has been the 100% owner of all the issued and outstanding share of IMC. (Exhibit M). The testimony of Friedmann was that Rieman was the 100% owner of IMC. Further, Attorney Brown testified that his client Constantine had a beneficial interest in the stock of IMC pursuant to an agreement with Rieman dated December 20, 1994 (Exhibit P) but that Constantine never satisfied the contingencies under said agreement to acquire said interest. (Exhibit P).
It is clear that Rieman represented that he would accept any reasonable offer below the listing price. The evidence shows that Rieman was prepared to sell the property for $4.7 million dollars which was a reasonable offer below the listing price. See Exhibit I, Paragraphs 24, 31 and 34 and Plaintiff's Exhibit #21, Paragraphs 14, 32, 33 and 34. CT Page 7711
Also, it is asserted that Rieman represented he would cooperate with the plaintiff and allow the plaintiff to aggressively market the property without interference. The evidence shows that Rieman cooperated with the plaintiff. Exhibit 3-a, letter, attached to the complaint states the cooperation required by Constantine.
It is clear that the background of the exclusive right to sell came about as the result of a financially troubled property. Benedetto was sought out because it was believed that with his connections in Greenwich that if any one could put together a fast sale of this distressed property, it was him. Note that he was in the project from March 21, 1996 through June 17, 1996 when the property was foreclosed. The goal was not to give him the opportunity to sell this at long term, but to put together a quick sale to avoid the foreclosures.
The third count of the complaint alleges fraud. Fraud must be proven by more than a mere preponderance of the evidence. It must be proven by clear, precise and unequivocal evidence. See Alaimov. Royer, 188 Conn. 36 (1982); Bound Brook Associates v. Norwalk,198 Conn. 660, (1986). Since this court has found the representations to be true, the fraud count cannot be proved. In order to prove an action of fraud among other things, the plaintiff must prove that the defendant made a false representation of an existing fact.
The fourth count sounds in interference by Rieman. Paragraphs 1 through 11 of the second count were incorporated. Paragraph 12 alleges that Rieman conspired with creditors to allow the creditors to obtain title to the real property through foreclosure proceedings to the detriment of IMC and the plaintiff, and that Rieman interfered with the business relationship between the plaintiff and IMC. Specifically, it is alleged that Rieman entered into an agreement with Kral, who held a mortgage on the property, whereby Rieman and IMC would allow the foreclosure action brought by Kral to be completed quickly without opposition, thereby immediately giving title to the property to Kral at a price below fair market value.
The court took judicial notice of Pour v. Independence MarineCorp. , CV96 0151840 S. In that file the appraisal established a fair market value of $2,600,000. The property was encumbered by a first mortgage which had a payoff as of May 31, 1996 of over $3.4 CT Page 7712 million dollars. It also had a second mortgage which had a payoff as of May 31, 1996 of $810,000. (Exhibit X). The court finds there was no equity in the property. Strict foreclosure was the appropriate vehicle to extinguish the rights of the defendant IMC. In this case, the defendants had no defense to the foreclosure action. Exhibit Y, a letter of understanding between RFK and Rieman, limited Rieman' s exposure under his personal guarantee. It did not in any way interfere with the plaintiff's ability to sell the property. The evidence showed that the plaintiff presented the defendants with a total of two offers, one from Senior Residential Inc. for $1.75 million dollars (Exhibit Q, and a second from Beaudry Commercial Real Estate for $625,000 (Exhibit R). Both of which were sent to the defendants in mid-April 1996. Benedetto testified that there were no other offers presented to the defendants, notwithstanding the fact that he believed the property was worth $54 million dollars "every day of the week."
In order for recovery to be had under a tortious interference with business relationship theory, there must be present a tortious element such as fraud, misrepresentation, intimidation or molestation. See, Kecko Piping Co. v. Monroe, 172 Conn. 197
(1977) or the defendant must have acted maliciously. See, Goldmanv. Feinberg, 130 Conn. 671 (1994). In this case, there was no proof of a violation by the defendants.
As to the fifth count which sounds in Connecticut Unfair Trade Practices, the plaintiff has failed to sustain their burden. The plaintiff has alleged all forty-seven paragraphs of all counts and made them 1 through 47 of the fifth count and has added paragraph 48 alleging an Unfair Trade Practices violation. The court finds that the complaint does not allege that the acts complained of were performed in a "trade or business." The courts have held that this is a necessary ingredient in a Connecticut Unfair Trade Practices Act case. See, Web Press Services Corp. v.New London Motors Inc., 203 Conn. 342 (1987) and Pergament v.Green, 32 Conn. App. 644 (1993).
As to the unfavorable inference of Secondino, the court does not reach it based on the decision above. The court does, however, find that Rieman was not a witness whom the defendants would naturally produce. Friedmann handled all the negotiations and was the key player and testified. In fact, the offers to purchase presented by Benedetto were sent directly to Friedmann. Friedmann was in control of the negotiations. CT Page 7713
As to the defendant's special defense, the court finds that they have failed to sustain the burden of proof. The court has found that the plaintiff has not proven its case to the standards necessary in a civil case, but does not find that the special defense has been proven but rather that the plaintiff has failed to prove their case.
Accordingly, the court enters judgment for the defendants on all counts of the complant.
KARAZIN, J.