## NANCY DAOUD *v.* WHITNEY M. COOK
### (AC 33729)

Gruendel, Bear and Bishop, Js.

Argued May 14—officially released September 4, 2012

*Arnold M. Potash*, for the appellant (plaintiff).

*Robert A. Lacobelle*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Nancy Daoud, appeals from the judgment of the trial court rendered against her, following a hearing on a motion brought by the defendant, Whitney M. Cook, to compel compliance with an arbitration award requiring the plaintiff to use reasonable commercial efforts to rent office space not being used by her. On appeal, the plaintiff claims that the court improperly: (1) determined that she violated her fiduciary duty in not using reasonable commercial efforts to rent space in the building, (2) interpreted a certain phrase in the arbitration award, "not being used

by her," in a manner that modified the arbitration award and (3) found that the defendant sufficiently had proved damages.[1] We affirm the judgment of the trial court.

The following undisputed facts and procedural history are pertinent to our consideration of the issues on appeal. At all relevant times, both the plaintiff and the defendant were financial advisors and operated separate financial practices. The parties initially entered into a joint venture under which they shared and paid business expenses common to both their practices. In June, 1999, they purchased a two floor commercial building located at 90 Oxford Road in Oxford. Following this purchase, the parties formed a two person limited liability company, known as W & N, LLC (company), with each party owning a 50 percent interest in the company. The major asset of the company is title to the building; neither party individually owns an interest in the building. The company was formed to own and manage the building and to handle the parties' common business expenses. From the date of the acquisition of the building, the company rented office space and collected payments from the separate business entities run by the plaintiff and the defendant.

Sometime in 2002, the parties' accountant proposed, and the parties implemented, a plan through which the company would own only the real estate and another entity would be created to handle the sharing of the operating expenses of the parties' respective practices. The parties made payments to the company to cover

---

[1] For the ease of organization, we have consolidated the plaintiff's claims. In her brief, she crafted these arguments into five separate claims, namely, that the court erred in: (1) finding the plaintiff violated her fiduciary duty; (2) its finding as to damages; (3) finding that the plaintiff did not use reasonable commercial efforts to rent space in the building; (4) finding that the arbitrator knew that the space that was vacated by the defendant and David Levine was unoccupied at the time of the arbitrator's award; and (5) modifying the arbitration award and finding that the plaintiff had an obligation to rent space in the building.

their expenses and each also paid $3000 a month in rental payments for their respective office spaces in the upstairs of the building. In turn, the company maintained, operated and repaired the property, paid the monthly mortgage installment of $2767 and distributed $1500 back to each party.

While the parties each occupied one of the upstairs offices in the building, the company also took on additional tenants in the office space located downstairs. First, Henry Cormier rented the downstairs office space, and, when he left, David Levine rented the space. Both Cormier and Levine paid $1300 a month in rent for use of the downstairs office space. In the fall of 2003, the plaintiff and the defendant ended their personal and professional relationship, and, in August, 2004, the defendant and Levine moved out of the building's office space. The defendant subsequently filed a demand for arbitration, claiming dissolution of the company, division of the equipment, sale of the property and reimbursement of all expenses paid by the defendant on behalf of the plaintiff for the company's common costs.[2] The arbitration commenced on February 21, 2005, and an additional hearing was held on June 7, 2005. The arbitrator issued an arbitration award on July 18, 2005, which was confirmed by the court on September 26, 2005. The arbitrator's award rejected the defendant's request to sell the property and provided that the plaintiff had the right to continue her financial practice in the building owned by the company. Significantly, paragraph 8 of the award provides that while the plaintiff continued to occupy office space in the building, she was to "use reasonable commercial efforts to rent space in the [company's] office building not being used by her" and that she must "equally divide the net rental

[2] Binding arbitration took place pursuant to a provision in the company agreement requiring arbitration for any disagreements that might arise between the members of the company.

profits from such rental(s) no later than every six (6) months and pay one-half thereof to [the defendant] . . . ."

After the arbitration award was issued, in September, 2005, the plaintiff expanded her use of the building to include the office space formerly occupied by the defendant and Levine. Stephen Archer, an associate financial advisor employed by the plaintiff since September, 2005, initially occupied office space upstairs, and then he moved to the downstairs office formerly occupied by Cormier and Levine. Another employee of the plaintiff, Brian Lasse, testified that he occupied space on the second floor beginning in July, 2005. Neither Archer nor Lasse paid rent to the plaintiff, nor did the plaintiff remit payment to the company for the use of these office spaces.

On February 16, 2010, the defendant filed a motion to compel compliance with the arbitration award and for an assessment of damages. In a memorandum in support of the motion filed on July 6, 2011, the defendant asserted that the plaintiff failed to comply with the arbitration award by expanding her use of the building without properly remitting fair rental payments to the company. The plaintiff submitted a memorandum in reply arguing that the arbitration award only required her to use reasonable commercial efforts to rent space not being used by her, and, because she had used the additional office space for her financial practice, she had complied with the terms of the award.

After an evidentiary hearing on June 14, 2011, the court, by memorandum of decision dated July 29, 2011, determined that the plaintiff failed to comply with the arbitration award by wrongfully expanding her use of the building without remitting payment of fair rental value to the defendant and, accordingly, awarded the

defendant damages in the amount of $131,400. This appeal followed.

I

The plaintiff first claims that the court's determination that she failed to use reasonable commercial efforts improperly included a finding that she violated her fiduciary duty. Specifically, the plaintiff argues that the court's finding was improper because whether there was a violation of fiduciary duty was not before the court.[3] Although we agree that a claim that the plaintiff violated a fiduciary duty was not before the court, we also conclude that the court's finding of a violation provided nothing more than an explanation of what "reasonable commercial efforts" meant within the context of the plaintiff's relationship with the company.

The plaintiff's argument relies on *Pergament* v. *Green*, 32 Conn. App. 644, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). In *Pergament*, this court determined that the trial court improperly had relied on the theory of breach of fiduciary duty and, therefore, that its finding of breach of contract was improper because the finding was "wholly dependent on the court's fiduciary duty analysis." Id., 652. By contrast, *Mitchell* v. *Mitchell*, 31 Conn. App. 331, 625 A.2d 828 (1993), is more like the present case. In *Mitchell*, this court concluded that although the trial court's analysis of a specific legal theory exceeded the scope of the plaintiff's cause of action, that departure of analysis did not undermine its ultimate judgment. Id., 335–36

---

[3] During the course of the hearing when the defendant's counsel was questioning a witness, the court indicated that the lawsuit was not for violation of fiduciary duty:

"The Court: I don't have a lawsuit here for violation of fiduciary duty; that's not what this case is about. . . . This is not a lawsuit—you didn't bring a lawsuit here for usurpation of corporate opportunity, breach of fiduciary duty. That's not the issue; it's not going to be the issue."

("[T]he trial court veered into a discussion of constructive fraud in its memorandum . . . . Because, in essence, the trial court concluded that the plaintiff proved both actual and constructive fraud, the inappropriateness of the constructive fraud analysis is of no consequence in this case.").

Here, the court's conclusion that the plaintiff improperly expanded her use of the building without paying fair market rental value to the company is not dependent on its discussion of whether the plaintiff violated a fiduciary duty to the defendant. A fair reading of the court's memorandum of decision leads us to the conclusion that the court's discussion of the plaintiff's fiduciary duty served not as the basis of the judgment, but as the informative backdrop against which the court measured "reasonable commercial efforts" as required by the arbitration award. In coming to its conclusion, the court analyzed the fiduciary duty a member of a limited liability company owes to the entity to inform its interpretation of the arbitration award's mandate that the plaintiff use reasonable efforts to rent in order to distribute potential rental income to the company's members. After its discussion of fiduciary duty, the court concluded: "Therefore, if the plaintiff made use of the vacated space, she was to pay fair market rental value to the [company]." Thus, although both the arbitration award and the court's memorandum of decision reference the fiduciary duty a company member owes to the entity, we conclude that the concept served only as an interpretive tool to aid the court in its determination of the plaintiff's efforts under the terms of the arbitration award.

The court's analysis underlines its interpretation of the arbitration award's order for the plaintiff to let the premises, collect rent and split rental proceeds with the defendant. We conclude that the court did not rely on whether the plaintiff violated her fiduciary duty as

a basis for awarding damages; rather, the court was informed by the plaintiff's fiduciary duty to the company in interpreting what efforts were required of the plaintiff to comply with the arbitration award.

We now turn to the plaintiff's argument that the court improperly found that she did not use reasonable commercial efforts to rent space in the building. First, we determine the correct standard of review for the plaintiff's claim. "What constitutes reasonable efforts is a question of fact for the trier. . . . We will not reverse the findings of the trial court unless we conclude they are clearly erroneous." (Citation omitted.) *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.*, 18 Conn. App. 384, 390, 558 A.2d 265 (1989). We therefore review the court's finding under the clearly erroneous standard of review.

The plaintiff simultaneously argues that she used reasonable commercial efforts to rent the office space and that she was relieved from making such efforts by using the space for her own practice. We first assess the plaintiff's claim that she made reasonable efforts. As we discuss further subsequently in this opinion, we conclude, as did the trial court, that a common language reading of the arbitration award reasonably means that the plaintiff was required to rent out the space she was not using at the time of the award and that, by expanding her use of the office space without paying fair rental value, she failed to comply with the award. Also, the plaintiff's argument that the court erred in finding that she did not use reasonable efforts is without merit in light of the evidence that the plaintiff made no efforts to find tenants and collect rent.

"The duty to mitigate requires a landlord to 'make reasonable efforts' to minimize damages . . . which includes taking steps to relet the premises." (Citation omitted.) Id. (finding it unreasonable that plaintiff failed

to hire broker for four months and produced no evidence of what efforts were made by broker to lease premises). In support of her claim that she actually made reasonable efforts, the plaintiff asserts that she contacted a real estate agent and placed two advertisements for the space. The trial court, however, could have given little or no weight to the plaintiff's proffer in arriving at its conclusion that "[s]he has not made reasonable efforts to rent out the premises . . . ." Contrary to the plaintiff's argument regarding reasonable efforts, the evidence shows that the plaintiff expanded her use of the office space and failed to pay rent to the company for the use of those spaces. The plaintiff acknowledged, as well, that, since the arbitration award, she has not remitted any rental payments to the company, despite the fact that she has had numerous employees working in the upstairs and downstairs office spaces. The evidence regarding the minimal efforts of the plaintiff to rent the premises in question amply supports the court's findings of noncompliance with the arbitration award. "[W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Pisani Construction, Inc.* v. *Krueger*, 68 Conn. App. 361, 364, 791 A.2d 634 (2002). We conclude, on the basis of our review of the record, that the court's finding that the plaintiff failed to make reasonable efforts was not clearly erroneous.

The plaintiff's alternate claim that she was not required to make reasonable efforts merits little consideration. The language of the arbitration award plainly sets forth the requirement that she make reasonable efforts to rent space she was not using. Additionally, there is no language in the arbitration award suggesting that the plaintiff could avoid making reasonable efforts by using the space herself.

## II

The plaintiff next claims that the trial court improperly interpreted the arbitration award in a manner that effectively modified it. Specifically, the plaintiff claims that the court's interpretation of the phrase "not being used by her" as referring to the space not being used by the plaintiff at the time of the arbitration decision is improper and such an interpretation modifies the arbitration award. We are not persuaded.

First, we address whether the court properly interpreted the requirement in the arbitration award that the plaintiff attempt to rent space "not being used by her" as referring to the space that was empty at the time of the arbitration hearing and decision. It is well established that an arbitration award, once confirmed by a court, has the finality of a judgment. See General Statutes § 52-421.[4] "Confirmation of an arbitration award converts it into an enforceable judgment of the Superior Court." (Internal quotation marks omitted.) *Phoenix Windows, Inc.* v. *Viking Construction, Inc.*, 88 Conn. App. 74, 77 n.3, 868 A.2d 102, cert. denied, 273 Conn. 932, 873 A.2d 1001 (2005). "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation

_____

[4] General Statutes § 52-421 (b) provides in relevant part: "The judgment [confirming an arbitration award] shall have the same force and effect in all respects as, and be subject to all the provisions of law relating to, a judgment or decree in a civil action . . . in the court in which it is entered. . . ."

marks omitted.) Id., 77. Because the court's construction of the arbitration award is a matter of law, we engage in plenary review.

In the present case, there is ample evidence in the record to support the court's interpretation of the phrase "not being used by her" as referring to the space that the plaintiff was not occupying at the time of the arbitration award. At the evidentiary hearing, the plaintiff testified that, at the time of the arbitration hearing, the only people occupying the building's office space were the plaintiff and her support staff. The arbitrator's findings of fact specifically mentioned that the defendant and the company's other tenant, Levine, had moved out of the building leaving the plaintiff as the sole occupant. Furthermore, the court's interpretation of the phrase is supported by and consistent with other language in the award. Although the award gave the plaintiff "the right and power to continue her practice in the building owned by the [company]," such right was made in the context of the provisions in the award requiring her to make reasonable attempts to rent the other offices and to remit appropriate rental payments to the defendant.[5]

Finally, the plaintiff argues that the provision in the arbitration award requiring her to make reasonable attempts to rent office space "not being used by her" only required her to rent out office space that she chose not to occupy at any future time. The plaintiff would have the court read into the arbitration award "not

---

[5] The arbitration award provides specific details for how the plaintiff is to comply with the award and provide rental income to the company: "She is directed to inform [the defendant], through her and [the defendant's] counsel, of her efforts to rent, terms of rent, and so forth, during the time she occupies office space in the building. In addition, [the plaintiff] shall equally divide the net rental profits from such rental(s) no later than every six (6) months and pay one-half thereof to [the defendant], again through counsel."

being used by *her practice*" to mean she was allowed unlimited use of all the office space for her financial practice and needed only to rent out space she chose not to use. This argument is untenable in light of the intent of the arbitration award to allow the defendant the benefits of rental income guaranteed to him as a member of the company. If we were to follow the plaintiff's interpretation the practical effect would be to undermine the terms of the arbitrator's award. We agree with the court's assessment that if the plaintiff's interpretation was followed, she "could potentially hire several employees and occupy more or even all of the space in the building without being accountable to the defendant for any rental payments whatsoever, depriving him of the benefits guaranteed to him under the arbitration award." We conclude that the arbitration award demonstrates the arbitrator's intent that the plaintiff's rental requirement fulfill the purpose of the company to generate rental income and in order to give effect to the arbitrator's intent, the provision at issue in the arbitration award refers to the space in the building not being used by the plaintiff at the time of the arbitration hearing and decision.

We now turn to the plaintiff's claim that the court's interpretation amounts to a modification of the arbitration award. Although the court may not modify the terms of an arbitration award after the expiration of the statutory thirty day period; General Statutes § 52-420 (b); once the award is confirmed, the court possesses inherent authority to enforce the terms of the judgment by appropriate postjudgment orders. See General Statutes § 52-421;[6] *Aldin Associates Ltd. Partnership* v. *Healey*, 72 Conn. App. 334, 341, 804 A.2d 1049 (2002) ("[t]hus, the propriety of the court's action . . . will turn, in the first instance, on the question of whether

---

[6] See footnote 4 of this opinion.

its action was an effectuation of the arbitration award or a modification of that award").

The plaintiff argues that the court substituted its own judgment for that of the arbitrator. See *New Haven* v. *AFSCME, Council 15, Local 530*, 106 Conn. App. 691, 701, 943 A.2d 494 (2008) ("the court may not substitute its judgment for that of the arbitrator merely because its interpretation of the agreement or contract at issue might differ from that of the arbitrator"). Although we agree with this well established principle, we conclude that it does not fit within the record we confront. In sum, we do not agree that the court modified the award by a creative interpretation of its provisions. To the contrary, the court's interpretation gave full effect to the intent of the award that the defendant have the benefit of rental space the plaintiff was not using at the time of the award. In its decision, the court specified that it was "not modifying or reviewing the arbitration award. Rather, the court is construing and interpreting the judgment by looking to the circumstances surrounding the making of the judgment as required by the Supreme Court in *Sosin* v. *Sosin* [300 Conn. 205, 217–18, 14 A.3d 307 (2011)]." As stated previously, the court's interpretation of the phrase "not being used by her" is supported by ample evidence in the record, including testimonial evidence as well as other language in the arbitration award indicating that the arbitrator intended for the term to refer to the use of the space at the time of the award. Accordingly, we conclude that the court's interpretation was an effectuation of the arbitration award and not a modification.

### III

The plaintiff's final claim is that the court's award of damages was improper. Specifically, the plaintiff argues that there was "no evidence" as to the fair market rental

value for the premises to establish the defendant's damages. We disagree.

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled." (Internal quotation marks omitted.) *Twin Oaks Condominium Assn., Inc.* v. *Jones*, 132 Conn. App. 8, 16, 30 A.3d 7 (2011), cert. denied, 305 Conn. 901, 43 A.3d 663 (2012).

In this case, the trial court concluded that the testimony elicited at the evidentiary hearing was sufficient to establish the defendant's damages. "In actions requiring . . . a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. . . . [N]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. . . . [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion . . . ." (Internal quotation marks omitted.) *Sheridan* v. *Killingly*, 278 Conn. 252, 259, 897 A.2d 90 (2006).

At the evidentiary hearing, witnesses testified regarding the office space in the company's building. Two

offices are located upstairs, and one office is on the first floor. The plaintiff testified that she and the defendant each paid $3000 per month in rent for their upstairs offices prior to the dissolution of their business relationship. Contrary to this history, the plaintiff argues that the $3000 per month payment to the company was not actually a payment of rent and that the court erred in determining that $3000 is the fair market rental value of the office space. The plaintiff, however, testified that she wrote "rent" on the checks for the payment each month and that the payment was deducted as rent for her business. The plaintiff also argues that the court's determination that the downstairs office has a fair market rental value of $1300 is improper because the previous tenants' payments at that rate covered more than just rent. The plaintiff's argument has no merit, because the court explicitly stated its valuation of the downstairs office was based on the plaintiff's own testimony that $1300 was a fair market value. Furthermore, the court is not required to base its conclusion as to the fair market value of real property on a professional appraisal. *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 544 n.7, 429 A.2d 801 (1980); see also *Young* v. *Vlahos*, 103 Conn. App. 470, 483, 929 A.2d 362 (2007) ("[t]he defendant has offered no evidence that the agreed upon rent in this case was not the fair rental value of the premises"), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008); *Sachs* v. *Sachs*, 22 Conn. App. 410, 422, 578 A.2d 649 ("[a] party may testify to the value of her own property"), cert. denied, 216 Conn. 815, 580 A.2d 60 (1990).

The court calculated the damages by identifying all the office spaces, determining the fair market rental value, as established by testimony, and measuring the amount of time that the offices had been used by the plaintiff's employees. Therefore, we conclude that the

court's determination of the fair market rental value was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.